MOREL *v.* SOLOMON *et al.*

(In Banc.   May 10, 1948.)

[35 So. (2d) 314.   No. 36764.]

**Engle, Laub, Adams & Forman,** of Natchez, for appellant.

**Brown & Gwin,** of Natchez, for appellee.

**Griffith, J.,** delivered the opinion of the court.

On May 16, 1947, appellant, hereinafter called the buyer, purchased from appellee, a partnership, hereinafter called the sellers, an electric washing machine for an agreed price of $298.81, to be paid on September 1, 1947. The machine was to be delivered to buyer's home by sellers, which was done, and buyer was to install it therein, and this was done. The machine in its original condition could be and was installed by the buyer himself unaided, and with such simple tools as he had.

The machine was put into immediate operation, and it was soon found that it would not do the work for which it was intended, but, on the contrary, would overheat and cut off. Sellers were promptly notified of this and they sent an electrical mechanic to put the machine in order. His efforts were not successful, and were later repeated, still without success, and finally sometime early in August 1947, sellers sent for the machine, took it up from its installation, and sent it to the manufacturer's agents in New Orleans for the proper attention to it there. This was with the apparent consent of the buyer.

Sometime later, and shortly after the first of September, 1947, the machine was returned to sellers from New Orleans and sellers thereupon sent it to the home of buyer, but did not reinstall it. The tendered delivery was simply by leaving it in the doorway on the back porch. Buyer found that as a part of the work on the machine in New Orleans a plate had been put over the door and that it would require special tools to take the plate off. Buyer further says of this, and it is undisputed, that ''at the bottom there is an opening, say about ten inches by six inches and a little door you pull out on the right side of the drain and on the left side when the machine came back there was a plate of some type and I looked at it and I didn't want to become involved by taking anything —any part off the machine.''

Upon observing this condition, buyer called the sellers by telephone and insisted that sellers should reinstall the machine, or, in other words, restore the machine to the installation from which sellers had taken it. Sellers refused, saying that they were selling machines not installing them, whereupon buyer delivered it to a transfer company for redelivery to sellers, who refused it, and the transfer company put it in storage where it still remains.

There is no substantial dispute that the machine up to the time it was taken by the sellers to be sent to New Orleans was of no use, not to say worthless; and some of us are of the opinion that for that reason no obligation of acceptance of it was imposed upon buyer, and that it was not in fact accepted, and the fact that it was sent by sellers to be repaired did not impose any enforcible obligation of acceptance on the buyer when it was returned. However that may be, all of us agree that had the sellers wholly failed to redeliver the machine to buyer after having sent it to New Orleans, no action could be successfully maintained by sellers for the purchase price.

If, then, the question of any previous acceptance were laid aside, there would still remain the issue, and one in any event determinative of the case, whether sellers redelivered the machine in such manner as to oblige buyer to accept it as delivered, or to state the inquiry in other words, were the sellers obliged to reinstall the machine in the installation from which sellers took it.

The acts which will constitute a delivery or redelivery vary with the different classes of cases and will depend upon the character, quantity, and condition of the property sold, as well as the circumstances of each particular case, Vol. 11, Words and Phrases, Perm. Ed., page 665, among the general rules being that when a specific article is purchased, a tender of delivery is not valid unless and until the article is in a proper condition for delivery and in such shape as will not devolve additional labor and expense upon the buyer. 55 C. J. pp. 325, 326.

If then we should say, for the sake of the argument, that it would have been the duty of the buyer to accept the repaired or reconditioned machine and to install it himself or at his own expense had it been tendered to him in the same condition as regards installation as it was when originally delivered to him, he was nevertheless not obliged to accept it with a plate screwed upon it in such manner that it would require the additional expense of a hired mechanic to install it or else would require additional tools had the buyer attempted to install it himself—with the risk that in himself dealing with the plate he would do something hurtful to the machine which would be charged against him should the machine again fail to work.

We conclude, therefore, that there was no valid redelivery to the buyer and that he should have had the peremptory charge requested by him.

We have not overlooked the testimony that after they had first refused to do anything whatever about the reinstallation, the sellers called back and said they would send a man to make the reinstallation. This testimony is insufficient to meet the issue, for it does not undertake to show that this was to be at seller's expense, as to which issue sellers had the burden of proof.

Reversed, and judgment here for appellant.