[File No. 7134]

KOPALD ELECTRIC COMPANY, a corporation, Respondent, v. MANDAN CREAMERY AND PRODUCE COMPANY, a corporation, Appellant.

(37 NW2d 253)

504.

Opinion filed April 8, 1949.   Rehearing denied May 13, 1949.

*Sullivans, Kelsch & Lord,* for appellant.
*C. A. Waldron,* for respondent.

GRIMSON, District J.   The plaintiff brought suit against the defendant on two causes of action.   The first cause of action is upon a claim that plaintiff on or about March 19, 1947, sold and delivered to the defendant electrical materials and supplies at the agreed and reasonable value of $590.88, for which payment had not been made though demanded.   The second cause of action is for labor in the installation of electrical equipment for the defendant of the agreed and reasonable value of $52.50, which has not been paid, making a total of $643.38 for which plaintiff demanded judgment.

The defendant in effect denies both causes of action except that it admits purchasing some electrical materials of the value of $24.79 and further admits liability for labor in the in-

stallation of said materials in the sum of $52.50 making a total of $77.29 for which it had attempted to make payment and offered to deposit the same with the clerk. Outside of that it denies all liability.

The case was tried to a jury. At the close of the plaintiff's case and again at the close of the entire case, defendant moved for a directed verdict on the grounds, among others, that other than the liability defendant had admitted no sale of materials had been shown in that the evidence showed that no title to the other materials claimed to have been sold had passed. The motion was denied and the jury returned a verdict for the plaintiff in the sum of $643.38. Thereupon defendant moved for judgment notwithstanding the verdict on the ground, among others, that the Court had erred in denying defendant's motion for a directed verdict. That motion was denied. Whereupon an appeal from the judgment and order denying the motion was taken.

The evidence shows that the plaintiff conducted a "contracting and electrical wiring" business at Minot, North Dakota; that the defendant Mandan Creamery and Produce Company operated a branch at Minot, of which, one, Paul Hess, was manager; that in December, 1946, the defendant asked the plaintiff to do some re-wiring for the incubators in its place of business, which was done by the plaintiff in January 1947. The items for materials and labor on that job constitute that part of this matter which is admitted by the defendant and for which payment has been offered.

In addition to that, however, and in the same conversation in December, the plaintiff claims an oral agreement was reached between it and the defendant for the plaintiff to furnish the materials and labor to connect up a larger power equipment which the defendant intended to install; that the agreed cost was list price for the material and $3.00 per hour for labor; that in accordance therewith he purchased special material, consisting of heavy wire, large conduits, etc. As the materials arrived the plaintiff recorded them on his job sheet but made no billing thereof to the defendant. They were, however, immediately taken to the defendant's place of business by plaintiff's employees. Nothing had been done to fit this material for serv-

ice and the heavy equipment had not arrived when, on July 21, 1947, the defendant's place of business, together with this material, was destroyed in the disastrous oil fire occurring in Minot that day and not originating on the defendant's premises. About a week after the fire the plaintiff for the first time billed the defendant for this material including therein the minor job that had been completed. For that completed job the defendant immediately drew its check and offered payment in the sum of $77.29 denying liability for the materials for the separate and larger job that had been merely stored on the premises. The check was returned. Thereafter this suit was commenced.

The main issue to be determined is whether there was any evidence at the time the motion for a directed verdict was made to the effect that the title to those materials had passed to the defendant before their destruction, so that plaintiff could charge for and be entitled to payment separately for them. If there was any evidence thereof the motion was properly denied and the matter was for the jury to decide.

Section 47–1104 ND Rev Code 1943, provides that:

"Title is transferred by an executory agreement for the sale or exchange of personal property only when the buyer has accepted the thing, or when the seller has completed it, prepared it for delivery, and offered it to the buyer with intent to transfer the title thereto in the manner provided by sections 9–1208 to 9–1227, inclusive."

The passing of title in the purchase and sale of personal property depends upon the intention of the parties. That is the test as to whether title has passed or not. St. Anthony & Dakota Elevator Co. v. County of Cass, 14 ND 601, 106 NW 41.

Williston in Volume 2 of his Revised Edition on Sales, page 9, says:

"But now the rule has become clearly recognized that in case of an agreement for consideration, whether the consideration consists in some actual performance as payment of the price, or in a promise, express or implied, the time of the transfer of the property (wherever such transfer is possible) depends upon the intention of the parties, however indicated."

Sub-section 2 of § 51–0120 ND Rev Code 1943, provides as one

of the rules for ascertaining the intention of the parties as to time when title passes to the buyer: "Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such a thing is done." The basis of this presumption Williston says, on page 15: "is the natural inference that the parties do not intend an immediate transfer of the property in the goods if the seller has yet to expend labor upon them before they are in the state contemplated by the bargain."

The case of Lumry v. Kryzmarzick, 48 ND 234, 184 NW 254, involved the purchase of a second-hand gasoline tractor "in good working order." The plaintiff sued for the purchase price. His employee had made delivery upon the premises of the defendant but at the time the ignition system was lacking, a cylinder was cracked and it failed to work. This Court said: "Where, after delivery to the purchaser in the circumstances disclosed in the evidence, work of a substantial character remained to be done by the seller to put the property in a condition in which it would be of some use to the purchaser, it is a fair inference that the parties did not intend that title should pass until this work was done." The court says, further: "It is true that delivery is one of the strongest circumstances indicative of intention to transfer title immediately. Williston on Sales, section 265. But where delivery of physical possession is made only as a step in the performance of the contract and for the purpose of better enabling the seller to perform his remaining obligations, the delivery is conditional only and does not control the passing of title. And this is particularly true where the thing delivered is not capable of being used by the buyer without a more complete fulfillment of the seller's obligations. See Kitson Machine Company v. Holden, 74 Vt. 104, 52 Atl. 271." In 9 CJ 732 the principle approved by many courts is laid down that: "When the builder is to furnish the materials and labor for the performance of a contract requiring the erection of structures on the land of the owner, the materials generally remain the property of the builder until they are affixed to the land of the owner or are de-

livered to and accepted by him as his property." See also 17 CJS 1110.

Mr. Kopald testified the agreement was that "they (the defendant) were getting in some power equipment that increased their load . . . and this required a larger service. We had to increase the service to take care of the larger load and *we had to manage to get the size of pipe and wire in order to take care of that order.*" That is an agreement to do a job including the furnishing of material for that job. He ordered the material and as it arrived he had it delivered to the defendant's premises. He says: "I called him, (Mr. Hess) there was some stuff for the job and I was going to send it down there." Whether all the materials had arrived or not is not disclosed by the evidence; but plaintiff had complete control over the materials and after the fire sent his men to salvage some of the pipe without asking defendant's consent. Defendant admits knowledge that these materials were stored in its buildings, but no help was given the plaintiff by defendant's employees in connection therewith and no dominion was exercised by the defendant over the materials. The materials were not put into the condition required for the job.

In Dinnie v. Johnson, 8 ND 153, 77 NW 612, this Court held: That in cases of oral agreement "where an action is brought against the buyer by the seller for the agreed price of the goods, the seller has the burden, not only to show that the contract of sale was entered into; he must go further, and show that the goods so contracted to be sold were voluntarily received and accepted by the buyer under the contract of sale. That acceptance by the buyer is as vital to the recovery as the existence of the contract to sell." See also Hart-Parr Co. v. Finley, 31 ND 130, 153 NW 137, LRA1915E 851, Ann Cas 1917E 706. Such acceptance is not shown by the evidence in this case. Storage of the materials on defendant's premises is all that can be inferred.

Furthermore, to sustain its claim the plaintiff would have to show that the agreement was divisible; that the materials were to be paid for separately from the labor. On the matter of the divisibility of a contract this court, in Söderstrom v. White, 68

ND 293, 279 NW 306, 117 ALR 391, held that, "In determining whether a contract is divisible or entire, the court will consider the terms of the contract, its subject matter, and other circumstances disclosed by the evidence, including the conduct of the parties." 2 Williston, Sales (Rev ed) § 466aa, p 760, says:

"The governing principle is the manifested intention of the parties in view of the nature of the contract and the usages of business—that is, their intention to have performance of the contract in parts and have the performance of a part on one side the price or exchange of a corresponding part on the other."

The Supreme Court of Oregon held in Pettigrove v. Corvallis Lumber Mfg. Co. et al. 143 Or 33, 21 P2d 198, that, "Parties' intention must be ascertained from contract as whole and not from separate parts thereof taken without regard to one another." See also Palmer v. Fix, 104 Cal App 562, 286 P 498, 500.

The evidence disclosed that many similar jobs had in the past been performed by the plaintiff for the defendant; that plaintiff invariably furnished the materials and the labor, at list price for the materials and the union rate per hour for the labor; that on the completion of the job plaintiff removed the excess material and then billed defendant for both the labor and material used on the job. Plaintiff's bookkeeper testified: "The practice we had in billing is this way, as material would go out we would charge it against that job. That is why it would not be billed until a later date, *or until it was being installed for use on the job.*"

The evidence further discloses that the job of rewiring the incubators was ordered in December 1946, completed in January 1947, at which time plaintiff removed the excess materials on completion of the job. In salvaging the material after the fire the plaintiff was following that custom. That seems to have been according to the usage of the business.

One of the reasons urged for the claim that the agreement to pay for materials and labor was divisible is that the rate set forth in the agreement was list price for the materials and three dollars per hour for labor. That, however, is but the schedule by which a total price is computed. In 17 CJS 790, the principle is laid down that: "The fixing of a price per unit for the ascertainment of the compensation for performance of the contract

as a whole will not render the contract severable." In Johnson v. Fehsefeldt, 106 Minn 202, 118 NW 797, 20 LRA NS 1069, the Minnesota Supreme Court holds that: "The mere fact that a price has been affixed to each bushel of a crop contracted to be threshed is not sufficient to make it severable." See also Fancher et al. v. Grant County, 28 NM 179, 210 P 237, 248. Kelly Constr. Co. v. Hackensack Brick Co. 91 NJL 585, 103 A 417, 2 ALR 685.

The evidence clearly shows an oral agreement for two separate jobs—one for wiring the incubator, the other for wiring the heavier power equipment. However, in the wording of the agreement, the manner of carrying it out, the usage of the business, the testimony as to delivery and as to billing, the dominion of plaintiff over the materials until the job was finished and the retaking of the surplus, there is no indication the parties intended a divisible contract as between the materials and the labor for a certain job. The evidence does not warrant the inference that there was a separate agreement for the purchase of the materials. The securing of the materials and the delivering of them to the defendant's place of business were but steps in the performance of the whole job. Before such materials were of use to the defendant they had to be installed in the wiring system of its building. That was a part of the plaintiff's agreement. Until so serviced they were of no use to the defendant.

Giving all the evidence the construction most favorable to the plaintiff there is nothing to show that it was the intention of the parties to make a contract which was divisible as between materials and labor. Plaintiff therefore failed to prove facts sufficient to entitle it to a verdict for the cost of the material separately.

, When, however, the materials for each job had been installed then the plaintiff was entitled to his price for that job figured according to the schedule agreed upon.

The judgment is reversed and the case remanded for further proceedings in accordance herewith.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS and BURKE, JJ., concur.

BURR, J., did not participate.