BERNARD GOEDEKER, DOING BUSINESS AS NEBRASKA CUSTOM KITCHENS CO., APPELLEE, v. PETER KIEWIT SONS' CO., A CORPORATION, APPELLANT.

106 N. W. 2d 679

Filed December 23, 1960. No. 34851.

*Story, Pilcher, Howard & Hickman,* for appellant.

*Cassem, Tierney, Adams & Henatsch,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Bernard Goedeker, doing business as Nebraska Custom Kitchens Company, brought this action, which is in the nature of a declaratory judgment suit, in the district court for Douglas County against Peter Kiewit Sons' Company, a corporation. The purpose of the action is to have the court determine the ownership of certain personal property on January 12, 1959, when it was totally destroyed by a fire of undetermined origin, in order to fix the responsibility for the loss, both parties allegedly having insurance to cover it. The value of the personal property destroyed is claimed to be $7,995.04. A trial was had. The trial court found and decreed that the defendant was the owner of the merchandise destroyed by the fire of January 12, 1959, and that the reasonable and agreed value thereof was in the sum of $7,995.04. Defendant thereafter filed a motion for new trial and this appeal was taken from the overruling thereof.

For convenience we shall herein refer to plaintiff-appellee Bernard Goedeker, doing business as Nebraska Custom Kitchens Company, as Goedeker, and to defendant-appellant Peter Kiewit Sons' Company, as the Kiewit Company.

. Peter Kiewit owned a residence property in Omaha located at 9702 North Thirtieth Street. Sometime in 1958, he apparently entered into a contract with the Kiewit Company for a complete remodeling thereof, for, in October 1958, Kiewit Company commenced doing so, the work being done under the supervision of Nels Lillethorup as foreman.

Goedeker was, at all times herein material, a distributor in Omaha for St. Charles Manufacturing Company's custom-built kitchens, having been in that business in Omaha for about 15 years. Sometime prior to November 13, 1958, he negotiated with a representative of Kiewit Company to completely install a kitchen of this type in the home it was remodeling for Peter Kiewit. These custom-built kitchens are manufactured at St. Charles, Illinois, according to designs submitted by the distributor (here Goedeker) as approved by the customer (here Kiewit Company). Basically, such custom-built equipment consists of cabinets designed and built to fit the architect's plans for the particular room in which they are to be installed. The appliances used in connection therewith usually consist of standard equipment that is available and can be purchased on the open market. It is customary to ship the custom-built equipment disassembled in crates for assembling on the job.

As a result of the negotiations hereinbefore referred to an agreement was entered into by Goedeker with Kiewit Company whereby the former was to furnish and install for the latter a custom-built kitchen in the home it was remodeling for Peter Kiewit. The provisions thereof, insofar as here material, provide:

"You may consider this letter as your authority to proceed with the fabrication and furnishing as well as delivery and complete installation of all kitchen equipment as indicated on your drawing No. 3767-2 dated October 27, 1958 and revised November 10, 1958, for the sum of $8,700.00. * * * It is further understood that all

items of equipment mentioned above will be on hand and ready for installation during the last two weeks of December, 1958. * * * It is further understood that all appliances will be completely installed * * *."

Generally, in the absence of any contrary intention or agreement, the risk of loss follows the title. See, 46 Am. Jur., Sales, § 279, p. 463; Storz Brewing Co. v. Brown, 154 Neb. 204, 47 N. W. 2d 407; § 69-422, R. R. S. 1943. In order to have a passing of title there must be a delivery and acceptance thereof within the intent and meaning of the parties' agreement. See, Joyce Wholesale Co. v. Northside L. & M., Inc., 160 Neb. 703, 71 N. W. 2d 186; § 69-418, R. R. S. 1943; 77 C. J. S., Sales, § 154, p. 880; Kopald Electric Co. v. Mandan Creamery & Produce Co., 76 N. D. 503, 37 N. W. 2d 253; Western Silo Co. v. Gogerty, 187 Iowa 1, 171 N. W. 176; Stratton v. Andrew C. Sisman Co., 255 Mich. 451, 238 N. W. 171.

Goedecker ordered the custom-built part of the kitchen from the St. Charles Manufacturing Company of St. Charles, Illinois, with directions that it be delivered during the last 2 weeks in December of 1958. It was loaded by the manufacturer in St. Charles, Illinois, on December 26, 1958, in a furniture van and was then transported to Omaha by a motor common carrier. Due to delays in transit it did not reach Omaha until Saturday, January 3, 1959. Although consigned to Goedeker at his address in Omaha the cardboard crates, containing the custom-built fixtures for the kitchen, were taken directly to the Peter Kiewit residence that was being remodeled and stored therein. Thereafter, on January 12, 1959, the Peter Kiewit residence was destroyed by a fire of undetermined origin as well as the contents thereof, which included the unopened cardboard crates and their contents.

The contract did not consist of a separate sale of the personal property, consisting of the custom-built cabinets and appliances, and the cost of the labor for

the installation thereof. Rather it was a contract for the fabrication, furnishing, delivery, and complete installation of these kitchen fixtures in the kitchen of the Peter Kiewit residence for an agreed price. It was not divisible. Consequently the delivery of a major part of the equipment to be installed in the kitchen to the Peter Kiewit residence, where it was stored with the knowledge and consent of Kiewit Company's foreman, did not constitute a delivery and acceptance thereof by the buyer. See Kopald Electric Co. v. Mandan Creamery & Produce Co., *supra.* As therein held: "Where pursuant to the terms of an executory contract materials are to be furnished and labor is to be performed in placing the same in usable condition, the contract is not divisible as between the material and labor so as to pass title to the materials before the required labor is performed, unless so specifically provided in the contract." See, also, § 69-419, Rule 2, R. R. S. 1943; 46 Am. Jur., Sales, § 420, p. 589; Morel v. Solomon, 203 Miss. 356, 35 So. 2d 314. However, the title may pass under such a situation if such is the intention of the parties even though something remains to be done by the seller to put the property in its final condition. See, § 69-419, R. R. S. 1943; International Harvester Co. v. Brownlee Brothers (Ark.), 329 S. W. 2d 177; 46 Am. Jur., Sales, § 420, p. 590. But that is not the situation here.

During the negotiations leading up to the contract it was the idea of the representative of Kiewit Company that the equipment should be on the Peter Kiewit property in late December of 1958, because he thought the remodeling of the residence would then be far enough advanced to permit the kitchen equipment to be installed. Consequently he wanted the assurance from Goedeker that he could have the equipment there at that time in order to avoid any delay in completing the remodeling. Goedeker assured him that he could. In view thereof the provision, which has been hereinbefore set out to that effect, was included in the parties'

agreement. Appellant aptly described what the parties intended the contract to mean when it states in its brief: "The contract called for the presence of the equipment on the premises during the last two weeks in December of 1958."

The custom-built kitchen equipment did not arrive from St. Charles, Illinois, until January 3, 1959, due to delay in transit. It was then taken to the Peter Kiewit residence and stored therein. However, the kitchen was not ready for its installation so it was left crated. At no time, prior to the fire on January 12, 1959, was the kitchen ready for the equipment to be installed, although Goedeker had his men check it constantly for that purpose. In fact, the parties agreed that the kitchen would not be ready for that purpose until the week of January 19, 1959.

Section 69-422, R. R. S. 1943, provides, insofar as here material, as follows: "Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether delivery has been made or not, except that * * * (2) Where delivery has been delayed through the fault of either buyer or seller, the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault."

Here the evidence shows that Kiewit Company wanted the custom-built kitchen equipment on the property in order to avoid any delay in its being installed whenever it had remodeled the kitchen so that could be done; that Goedeker delivered the equipment on the property on January 3, 1959, and would have immediately installed it if the kitchen had been ready for that purpose; that Goedeker continued to keep informed as to the extent of Kiewit Company's remodeling in order to install the kitchen equipment whenever Kiewit Company had the kitchen ready for him to do so; and that at

no time prior to January 12, 1959, when the fire occurred, was the kitchen in such condition that that could be done. Under this situation we think subsection (2) of section 69-422, R. R. S. 1943, is controlling.

The value of the personal property stored in the Peter Kiewit residence by Goedeker was fixed by the trial court at $7,995.04. From an examination of the record we come to the same conclusion.

In view of what we have said herein we think the trial court arrived at the correct conclusion and therefore affirm the judgment rendered by it.

AFFIRMED.