In the Matter of The GUARDIANSHIP of Henry O. SORUM, Incompetent.

Robert PERSON, Plaintiff and Appellant,

v.

Bennie HASS, Guardian for Henry O. Sorum, and Russell W. McIntyre, the Special Guardian for the said Henry O. Sorum, Defendants and Appellees.

Civ. No. 9497.

Supreme Court of North Dakota.

Jan. 8, 1979.

Farhart, Rasmuson, Olson, Lian & Maxson, Minot, for plaintiff and appellant; argued by Steven C. Lian, Minot.

Bert L. Wilson, Jr., Bowbells, for defendants and appellees.

PEDERSON, Justice.

Robert Person appeals from a judgment of the district court which prevents him from exercising an option that was granted to him in 1973. The option to purchase lands owned by Henry O. Sorum, an incompetent, was included in a renegotiated lease between Person and Sorum's guardian, Bennie Hass.[1] We affirm the judgment insofar as it disapproves the option but we remand for a determination of the severability of the lease and any restitution the parties claim under the 1973 lease.

Person leased the lands from his uncle, Sorum, in 1968 and 1969. These leases

---

1. The record indicates that Bennie Hass has resigned as guardian and that Kermit Mahlum was appointed to replace him. Because no action was taken to substitute parties (see Rule 43, NDRAppP), we will continue to use the name Hass as guardian.

were for five years with a renewal option of an additional five years. The rental was a ¼ crop share to the landowner. The leases included an option to purchase "at a price to be agreed upon."

In March 1972, Sorum was declared incompetent and Hass was appointed guardian. (Chapter 30–10, NDCC—repealed by § 82, Ch. 257, S.L.1973.) Person's actions, in some instances, were considered by others as attempts to take advantage of his uncle. All of Person's actions in this respect have been rectified and have no bearing upon the question before the court. The 1968 and 1969 lease agreements between Sorum and Person were not criticized as being improper in any respect.

Soon after his appointment as guardian, Hass, with the advice of counsel, renegotiated the lease with Person. The new lease gave the landowner a more favorable rental of ⅓ crop share to the landowner, extended the lease term slightly, and granted an option to purchase at the price of $45,000. Counsel for Hass informed Person that court approval was required and that the property could only be sold after advertisement and to the highest bidder. At the same time he assured Person that he would obtain court permission to sell. No approval was sought until 1974, when Person attempted to exercise the option.

Hass then petitioned the county court "for approval and confirmation of a farm lease." The petition stated that the lease contained an option to purchase at the price of $45,000, and asserted that "the terms thereof were just and reasonable . . . and that at the time the lease was entered into between the parties the fair market value of the premises was about $45,000 . . . . ."

In December 1974, the county court approved the lease but rejected the option. Because Person had not been given notice, a rehearing was scheduled for January 31, 1975, at which time the matter was continued indefinitely. On October 8, 1976, there was another hearing, after which the county court approved the lease but refused to approve the option to sell the land because "it was not in the best interest of the ward." That order was appealed to the district court where there was a trial de novo. See § 30–26–23, NDCC.

The district court found as a fact that the option price of $45,000 was fair and reasonable at the time the option was given, but that the market value had thereafter increased substantially. It concluded that approval of a sale pursuant to the option was not in the best interest of the ward.

On this appeal, the parties spend much of the argument discussing the application of § 30.1–35–01(2)(b), NDCC, which provides:

"The title applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this title."

We find this language plain and unambiguous, and applicable only where there has been a death. It is not applicable to this case.[2]

 The law under which the validity of a guardian's action will be measured is the law in effect at the time the act is done. See § 1–02–10, NDCC. In 1972, when Hass granted the option to Person, the law authorized the sale of real property owned by an incompetent with approval of the county court only: (1) at public auction (§ 30–19–11, NDCC, et seq.), or (2) at a private sale in accordance with the procedures for written bids (§ 30–19–14, NDCC, et seq.). In either event it was mandatory that prior notice of

---

2. Section 30.1–35–01(2)(b), NDCC, was adopted verbatim from § 8–101(a)(2) of the Official Text of the Uniform Probate Code (1970). The Official Text does not contain any commentary concerning the question whether § 8–101 U.L.A. (§ 30.1–35–01(2)(b), NDCC) applies to contracts entered into by a guardian of an incompetent prior to a state's enactment of the Uniform Probate Code. Other jurisdictions that have adopted the Uniform Probate Code have not addressed this question.

the sale be advertised § 30–19–13 and § 30–19–14, NDCC). The option was clearly invalid at the time when it was granted, and the district court appropriately declined to allow it to be exercised.

"Any provision of a contract is unlawful if it is:

1. Contrary to an express provision of law."

Section 9–08–01, NDCC.

Whether the option was fair and reasonable at the time it was negotiated is not controlling. Any attempt to convey the property in a manner not authorized by law is void. See § 9–08–01 and § 9–05–04, NDCC.

Asserting that the option provision cannot be severed from the lease, Person contends that if the court must deny the option, it must also declare the lease invalid, resulting in a reinstatement of the leases of 1968 and 1969, with their rental crop share of ¼ interest to the landowner. If that is correct, proceedings in the nature of an accounting are required.

The construction of a contract to determine its legal effect is ordinarily a question of law. *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894, 896 (N.D. 1978). It has been said that a contract may be severable even though a portion of it is tainted with illegality. *Schara v. Thiede,* 58 Wis.2d 489, 206 N.W.2d 129, 132 (1973). Whether or not a contract is severable ordinarily depends upon such factors as "the terms of the contract, its subject matter, and other circumstances disclosed by the evidence, including the conduct of the parties." *Kopald Electric Co. v. Mandan Creamery & Produce Co.,* 76 N.D. 503, 37 N.W.2d 253, 256 (1949).

In *Simon v. Schabo,* 117 N.W.2d 412, 414 (N.D.1962), a case where the issue was whether a surrender of a lease terminated an option, this court quoted with approval:

"' * * * Where the option to purchase in connection with the lease constitutes an entire agreement, the option itself falls if the lease is forfeited for a breach of the covenants therein contained or if the lease is terminated at any time as by abandonment or mutual release.' " *Simon v. Schabo,* 117 N.W.2d at 414, *supra,* citing 51 C.J.S. Landlord and Tenant § 87, p. 647.

We believe that that principle has some application here. The crop-share agreement contained in the 1973 lease increased the rental from one-fourth to one-third of the crop, and further extended the lease term. On its face, the lease does not disclose whether any or all of the rental increase was considered to be consideration for the option, and the court made no finding concerning the matter. If that determination cannot be made, the lease-option would necessarily be non-severable and, as Person contends, the lease must fall with the option.

We affirm the judgment insofar as it declined to approve the option and sale pursuant thereto. We remand for further proceedings to determine the extent of the severability of the various provisions of the lease-option, and for proceedings in the nature of an accounting to determine claims to restitution raised by the parties. No costs will be allowed on this appeal.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.