## BASS, MAXWELL & CO. v. INDEPENDENT GIN CO.

No. 18930.    Opinion Filed Nov. 5, 1929.

Rehearing Denied Dec. 10, 1929.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

Tomerlin & Chandler and Troy Shelton, for defendant in error.

DIFFENDAFFER, C. Defendant in error was plaintiff, and plaintiff in error was defendant in the trial court. They will be herein referred to as in the trial court.

Plaintiff commenced this action in the district court to recover for an alleged breach of contract for the purchase of certain cotton. Its claim is based upon three separate oral contracts.

The first contract is alleged to have been by telephone, on or about October 23, 1924, wherein it is alleged that plaintiff sold to defendant, and defendant bought from plaintiff, 25 bales of cotton, located at Jones, Okla., at a price of $22.62½ per cwt., "basis middling"; that pursuant to said contract, defendant, on October 24, 1924, sent its representative to Jones, Okla., for the purpose of tagging and sampling said cotton; that on that date 12 bales of the cotton were tagged, sampled and identified by placing defendant's tags thereon, and were paid for by defendant, leaving 13 bales to be thereafter delivered.

The second contract was alleged to be by telephone on October 30, 1924, and was for the sale of 50 bales at the price of $23 per cwt., "basis middling."

The third was by telephone conversation later in the day of October 30th, and was for an additional 25 bales at the price of $22.90 per cwt., "basis middling."

Plaintiff alleged, in substance, that: On October 31, 1924, defendant sent its representative to Jones, Okla., to receive the 88 bales, which had not theretofore been delivered to, and accepted and paid for by defendant, and that same was received and accepted by defendant and sampled and tagged as the cotton of defendant, and the weights ascertained; that at the same time defendant's representatives made an invoice of the three lots of cotton, being 88 bales, showing the gin number, and the identification tag numbers placed on said bales by defendant, and the weight of each bale. Plaintiff attached, as a part of its petition, alleged copies of the invoices as to the 13 bales, alleged to have been purchased October 23rd, the 50 bales, and the 25 bales alleged to have been purchased October 30th. Plaintiff further alleged that about 100 pounds of samples were taken from the 88 bales by defendant for the purpose of ascertaining the grade and average price thereof, and that thereafter the grades and average price were reported to plaintiff. It was further alleged that thereafter the agent of plaintiff inquired of Mr. Maxwell, one of the partners of defendant herein, whether or not the 88 bales of cotton were insured against fire by defendant, and that Maxwell informed him that, inasmuch as said cotton bore the identification tags of defendant, same was covered by its general insurance policies, and that the cotton belonged to defendant; that thereafter, on November 4, 1924, 59 bales of the cotton were damaged by fire, leaving 29 bales undamaged; that plaintiff notified defendant of the fire, whereupon defendant called plaintiff's attention to the fact that plaintiff had not accepted the grades placed upon the cotton by defendant and requested that the grades be accepted, and that plaintiff did accept said grades, and that within a few days thereafter, defendant agreed to and did take possession of the 29 bales of undamaged cotton, and at the same time agreed to pay plaintiff for the 59 bales that had been damaged by fire at the price and grade theretofore agreed upon; made verified proof of claim against the insurance company for the damage to the 59 bales, in the sum of $6,900, stating and representing under oath to the insurance company that it, defendant, was the owner thereof; that defendant took possession of the damaged cotton as its property and turned same over to a representative of the insurance company to salvage; that the defendant and the insurance company retained possession thereof for several weeks with a representative in charge thereof; that some three weeks after thus taking possession of the 29 bales, and after the 29 bales of undamaged cotton were taken and paid for by it, defendant attempted to repudiate the purchase of said cotton and refused to remove the salvage from plaintiff's premises and refused to pay plaintiff for the 59 bales, and that thereafter, to mitigate the damages, plaintiff sold and disposed of the same to the best advantage for the sum of $2,700, for which it gave defendant credit,

leaving a balance due plaintiff of $3,827.71, for which sum plaintiff prayed judgment.

Defendant answered by general denial; further, that the alleged purchase of cotton referred to in plaintiff's petition was wholly void and of no force nor effect, as being in direct violation of the statute of frauds in that defendant had not at any time received any part of said cotton, and had paid no part of the purchase price.

Defendant, as a further defense, pleaded that prior to the transaction here involved, it had purchased cotton from the Independent Gin Company of Jones, and that in such business a custom had grown up and existed, whereby such purchase was subject to a written confirmation of defendant, setting out the form used in such cases, and that in this case no confirmation had been executed by defendant.

By way of amendment to its answer, defendant further pleaded, in substance, that in the cotton business certain general customs in reference to buying and selling of cotton has become so fixed in the business that a set of rules embodying such general customs was put in effect by the Oklahoma State Cotton Exchange, under which rules delivery is absolutely necessary to complete a contract of sale or purchase of cotton. Defendant pleaded at length rules 1 to 6, inclusive, and the first clause of rule No. 9 of the Oklahoma State Exchange, and alleged that under such rules there had never been a delivery and acceptance of the 59 bales, either in fact or in law.

Plaintiff replied by general denial.

The issues as thus joined were tried to a jury, resulting in a verdict in favor of plaintiff for the amount sued for, together with interest at 6 per cent. from the 21st day of December, 1924.

Upon this verdict, after unsuccessful motion for new trial, judgment was rendered. From this judgment and the order overruling the motion for new trial, defendant appeals.

The petition in error contains 15 assignments. Assignments Nos. 1, 3, 4, 5, and 6 are not presented in the brief and will therefore be treated as abandoned. The first assignment presented is No. 2, and is as follows:

"Said court erred in overruling the motions of plaintiff in error to discharge the jury and continue said cause on account of the misconduct of defendant in error and its attorney in the opening statement to the jury and at numerous times during the trial of said cause, and in the argument of said cause to the jury in referring to, proving and arguing the fact that plaintiff in error had insurance upon the subject-matter of said action, and that the insurance company was liable to plaintiff in error, and that plaintiff in error should, therefore, be liable to defendant in error for the value of the subject-matter of said action, which was certain cotton that had been destroyed by fire, all of which was wholly prejudicial to the rights of plaintiff in error, and prevented plaintiff in error from having a fair and impartial trial."

The opening statement of counsel for plaintiff is not in the record, but the motion of counsel for defendant referred to in the assignment is as follows:

"Mr. Rittenhouse: Now comes the defendant and shows to the court that counsel for the plaintiff in his opening statement stated to the jury that they would show that the defendant had insurance to cover any loss or judgment that might be rendered in this case, and for that reason and under the authority of the case of Simms v. Yost, recently decided by the Supreme Court of this state, not yet officially reported, we ask that the jury be discharged, and the case continued for the term."

In the case of Yoast v. Sims, 122 Okla. 200, 253 Pac. 504, apparently the case referred to in the motion of defendant to discharge the jury as "Simms v. Yost," it was held:

"In a suit for personal injuries, after the jury has been sworn and placed in the jury box, no references should be made as to whether or not the defendant carried insurance, and if such references are made, it is reversible error, although the trial court instructs the jury not to consider the same."

Defendant cites the above case and many others of a similar nature. There can be no doubt but that the general rule is that a plaintiff in personal injury and kindred cases will not be permitted to show to the jury that defendant is in any way indemnified by insurance or otherwise against any loss that may be suffered by reason of any recovery by the plaintiff. We think, however, an entirely different rule would apply to the issues as joined in the instant case. It must be borne in mind that the principal defense of defendant in the instant case was that no delivery to or acceptance by the defendant of any of the cotton involved in the suit was ever made; that no part of the purchase price was paid; that no memorandum of a contract in writing signed by the defendant or its duly authorized agent was shown, and that, therefore, plaintiff could not recover for the reason that the contracts, being oral and involving more than $50 and for the sale of personal property, were void under the statute of frauds.

The question then is: Whether or not

evidence relative to defendant's having had insurance on the cotton damaged by the fire was admissible? The vital question being whether or not a delivery and acceptance of any part of the cotton represented by the three conceded oral contracts of purchase was had.

To constitute an acceptance or receipt required by the statute, there must be shown a transfer of the possession of the goods or a part thereof by and from the seller to the buyer, either actually, by manual delivery, symbolically, or constructively, by changing the nature of the seller's subsequent holding.

A constructive delivery is when, without any actual transfer of the goods, or their symbol, the conduct of the parties is such as to be inconsistent with any other supposition than that there has been a change in the nature of the holding by the seller, that is to say, a change of holding by the seller in that the seller thereafter holds the property as bailee of the buyer. Whether there has been such a change is a question for the jury. Swafford v. Spratt (Mo.) 67 S. W. 701.

It is well settled that any acts of the parties indicative of the ownership by the vendee may be given in evidence to show the receipt and acceptance of the goods to take the case out of the statute of frauds. Conduct, acts, and declarations of the purchaser may be given in evidence for that purpose. Garfield v. Paris, 96 U. S. 557.

During the course of the trial, defendant's counsel frequently objected to the introduction of evidence relative to the claim of plaintiff that defendant had represented to it that after the cotton was tagged and invoiced, the cotton belonged to defendant and was covered by its insurance.

There is little controversy as to what was done at the time the tags of defendant were placed upon the several bales of cotton.

Mr. Will Noonan was called as a witness for plaintiff, and testified in part as to a conversation had with Mr. Maxwell between the time the cotton was tagged and sampled and the date of the fire, as follows:

"Q. Had you ever had any conversation with him about the insurance on this baled cotton. A. Yes. Mr. Rittenhouse: We object to that as incompetent, irrelevant, and immaterial, and ask that the jury be discharged from further consideration of this case under the authority of Simms v. Yost. The Court: Overruled. Mr. Rittenhouse: Exception. Q. Detail it, all of the conversation you had with him about it. A. I called him up and asked him if his insurance covered that cotton, and he said anything with his tags on, that his insurance

covered. Mr. Rittenhouse: We move to strike this out as incompetent, irrelevant, and immaterial, and not competent, and ask that the jury be discharged from further consideration of this case under the authority of Simms v. Yost. The Court: Overruled. Mr. Rittenhouse: Exception. Q. When was the last conversation you had with him about the fire, before the fire? A. On the 31st of October. Q. And you had previous conversations of that kind with him? A. Yes. Q. Did you ever have any conversation with his representatives about that subject? A. Yes, with the man that took it up, the man that took up this cotton on the 23rd, which I believe his name was Mitchel, but as to that I ain't sure. Q. Now, when you talked to him—when he called you up about the grades before the fire, did you say anything about the insurance at that time? A. Yes, I asked him if his tags covered the insurance; I asked him on four different occasions on lots of cotton. Q. And what did Mr. Maxwell tell you on four different occasions? A. He told me the cotton that had his tags on was under his insurance."

Relative to a conversation had after the fire, he testified:

"A. I told them that we had a fire and that his cotton burned and also our cotton burned, and I also asked him to notify our insurance company and first he said 'Yes' and— Mr. Rittenhouse (interrupting): If the court please, we object to this at this time, or any other reference to insurance, and move that the jury be discharged from further consideration of this case. The Court: Overruled. Mr. Rittenhouse: Save an exception. A. Why, I told him that his cotton had burned and ours had burned and told him about the fire, and I also asked him if he would notify our insurance company. First he said 'Yes' and then he said 'No; you had better do that yourself, and I will notify my insurance company.' Mr. Rittenhouse: Now, we come again and move the court to discharge the jury from further consideration of this case under the authority of Simms v. Yost. The Court: Overruled. Mr. Rittenhouse: Exception."

And as to further conversation after the fire:

"A. Well, he told me to ship him in the good cotton that wasn't damaged, and that his insurance company would take charge of the balance. Mr. Rittenhouse: We move to strike this out as incompetent, irrelevant, and immaterial, and highly prejudicial, and ask that the jury be discharged from further consideration of this cause and the case continued for the term. The Court: Overruled. Mr. Rittenhouse: Save an exception. Q. Well, what did he say about paying for the 88 bales? A. I asked him when I shipped him that cotton if I would draw on him for all of the money, and he told me

'No,' and that he didn't have the money to spare at that time, and he would have the insurance company in a few days; that he would have the insurance in a few days, and that he had filed this claim. Mr. Rittenhouse: We ask that the jury be discharged on the same grounds as heretofore. The Court: Overruled. Mr. Rittenhouse: Exception. Q. What did he say about whether or not he had filed a claim with the insurance company? A. He said he had filed his claim and would have the insurance in a few days. Mr. Rittenhouse: We object to the question as incompetent, irrelevant, and immaterial, and we ask to strike the answer as incompetent, irrelevant, and immaterial, and we ask the court to instruct the jury to disregard the same, and also ask that the jury be discharged from further consideration of this case and the case continued for the term. The Court: Overruled. Mr. Rittenhouse: Exception. Q. You say he told you to turn these 59 damaged bales over to the insurance adjuster? A. Yes, sir."

And further:

"A. Well, I had asked him about drawing on him for the money on that cotton. Q. What did he say? A. Well, he said he had filed claim with the insurance company, and he would pay me when he got the money, and he would have it in a few days. Mr. Rittenhouse: Objected to as incompetent, irrelevant and immaterial, and I want that shown in each case and the same ruling, I presume, every time that is mentioned. The Court: Overruled. Mr. Rittenhouse: Exception."

And:

"Q. Did he ever tell you what became of his invoices for the 88 bales that was made up when his man was down there and tagged it? A. Yes. Q. What did he say? A. He said he gave it to either his stenographer or bookkeeper, and he couldn't find it, and he told her to put it away because he would need it to settle the insurance, and when the adjuster came, he couldn't find it. Mr. Rittenhouse: We move to strike this out as incompetent, irrelevant, and immaterial, and again ask that the jury be discharged from further consideration of this case. The Court: Overruled. Mr. Rittenhouse: Exception."

F. A. Rittenhouse was called as a witness for plaintiff and asked relative to a certain proof of loss filed by defendant on the loss at Jones, with the Union Marine Insurance Company. He testified that he had the proof of loss in his possession and produced it in court. The same was offered and put in evidence over the objection of defendant. It was, in part, as follows:

"Cotton Fire Claim.

"To the Union Marine Insurance Company.

"By Your Policy of Insurance. No. 956, dated July 31st, 1923, issued at your Agency at New York, expiring July 31st, 1925, you insured Bass Maxwell & Company on cotton, against loss and damage by fire to the amount of limit Dollars, $1,000,000.00)

"On the fourth day of November, 1924, a fire occurred at Jones, Okla., by which 59 bales of cotton insured under said policy were damaged to the extent of "Theoretical Total

"The bales so damaged were marked POLE-TINK and weighed 29,205 lbs. and graded—see statement attached

"The fire originated—exposure to fire in cotton gin building.

"The salvage remaining was 54 partial bales and the following disposition was made of it—Taken over for the benefit of insuring company and is being handled by Underwriters Salvage Company

"The said cotton was not covered in whole or in part by any general or specific fire insurance, except as follows: no exceptions.

"At the time of the fire, the said cotton was in the custody of Independent Gin Co. of Jones, Okla., who, in our judgment, are not liable for the loss.

"The said cotton was our property and absolutely at our risk, and the following parties————had made advances thereon to the amount of $——

"No other party had any interest in said property, or any part thereof, or had assumed any. risk thereon under contract of sale or purchase or otherwise."

The proof of loss was signed "Bass Maxwell & Co. W. D. Maxwell", and was verified as follows:

"Oklahoma City, Okla. 11-18-1▓▓4

"State of Oklahoma, County of Oklahoma, ss.

"Personally appeared, W. D. Maxwell, a member of the firm of Bass-Maxwell & Co. signer of the foregoing statement, who made solemn oath to the truth of the same, and that no material fact is withheld that the said company should be advised of.

"Before me C. P. Mitchell,
"Notary Public, in and for Oklahoma County, Okla.

(Seal) "My commission expires July 10, 1926."

It is this class of testimony that defendant strenuously insists was reversible error.

This evidence, we think, was clearly admissible, not for the purpose of showing that defendant was indemnified against loss by the insurance, but for the purpose of showing conduct, acts, and declarations of defendant indicative of ownership of the

cotton by defendant, as evidence tending to show the receipt and acceptance of the cotton so as to take the contracts out of the statute of frauds. Garfield v. Paris, supra.

The defendant sought to show nonliability of the insurance company under the policy, but the trial court, and we think properly so, held that the question of liability or nonliability under the policy was not a question in this case.

Defendant, however, was permitted in the examination of the witness Maxwell to show that the policy of finsurance of defendant provided only for liability for cotton that had actually been delivered to defendant, and that the insurance company had denied liability to defendant as to the 59 bales of cotton, upon the grounds that these bales of cotton had not been delivered to defendant, and that the insurance company had not paid any amount whatever on the claim filed by defendant. This led to some statements in the argument of counsel that were perhaps improper, but defendant ought not to be allowed to complain on account thereof. So far as the record discloses, this question was injected into the case by defendant itself. A party will not be permitted to invite error and then complain on account thereof.

Assignments 7 to 14, inclusive, are presented together for the reason, as stated in the brief of defendant, that "they revolve around the question of the sufficiency of plaintiff's evidence to entitle plaintiff to recover under the statute of frauds."

The question then presented is, whether or not there is any evidence reasonably tending to support the verdict.

We have quoted some of the evidence of plaintiff, a part of which is uncontradicted, and to determine the question presented, we are to review the whole record, not for the purpose of determining where the weight of the evidence lies, but to determine whether there is competent evidence therein reasonably tending to support the verdict.

By the undisputed evidence, it is shown that there were three separate oral contracts of sale; that each of them involved the sale of personal property of the value of more than $50; that the first contract was for 25 bales of cotton; that defendant received, accepted, and paid for 12 bales under this contract; that the remaining 13 bales sold under the contract, together with the 75 bales represented by the other two contracts, were all cut, sampled, tagged, and invoiced on the same day, and the weights, gin number, tag number, etc., entered in the books of plaintiff.

The price of the cotton under the first contract was to be $22.62½ per cwt., "basis middling." Basis middling was explained to mean for cotton that graded "middling," the basic price of $22.62½ per cwt. was to be paid, and cotton that graded above or below middling was to be paid for at an advanced price above or a reduced price below the basic price, depending upon the grade; that the samples when taken were to be sent to defendant and therefrom the cotton was to be graded by defendant and the average price determined. This was done, and the grades were reported to plaintiff by defendant, and plaintiff at the time accepted the grades, but in a short time thereafter called defendant and asked that the cotton be regraded, and that defendant send a man to Jones to regrade the cotton. Defendant agreed to do this, but before the man was sent, the fire occurred, and but 29 bales remained to be regraded. The evidence is in conflict as to what occurred thereafter. The evidence of plaintiff is to the effect that defendant directed plaintiff to ship the 29 bales of undamaged cotton, and that defendant would file claims against the insurance company for the damage to the 59 bales, and instructed plaintiff to turn the damaged cotton over to the salvage company; that plaintiff placed a man to guard or care for the damaged cotton for about two days, whereupon the representatives of the insurance company came to Jones, and took charge of and placed the cotton in the care of the same man whom plaintiff had employed, where it remained for 19 days; that the insurance company paid the man therefor, and reimbursed plaintiff for the money paid to the guard by plaintiff for the two days; that thereafter plaintiff shipped the 29 undamaged bales to defendant, which were paid for upon the basis of the grades originally fixed by defendant, that is, of the average price of $22.33 per cwt., or about 39c per cwt. below the basic price for middling grade; that the 29 bales were never regraded by defendant, nor any person acting for him, but that defendant had agreed, at the time instructions were given by defendant to ship the 29 bales, to pay for the 59 bales that had been damaged, as soon as the insurance company settled the insurance claim; that defendant gave as its excuse for not paying for all the cotton at the time the 29 bales were shipped that it was "a little short of money."

The evidence is in sharp conflict as to how the 29 bales were handled, defendant denying in toto the evidence of plaintiff and contending that the 29 bales were regraded

and delivered to defendant as a separate and distinct transaction. The evidence shows, without dispute, that a part of the 13 bales covered by the first contract, part of the 50 bales covered by the second contract, and part of the 25 bales covered by the last contract, were included in the 59 bales damaged by fire, leaving a part of each lot within the 29 undamaged bales.

The question then is, Was any of each lot of cotton delivered by plaintiff to, and accepted by defendant, under the original agreements?

The evidence is conflicting on this point, and this question was submitted to the jury by the court by instruction No. 12, which was not excepted to by either party.

The verdict of the jury settled this disputed question of fact, and the verdict will not be disturbed if there is any competent evidence which reasonably tends to support the same. Great Am. Ins. Co. v. Williams, 123 Okla. 206, 251 Pac. 1012; Kelley v. McKay, 120 Okla. 215, 251 Pac. 82; Youngblood v. Boake, 124 Okla. 84, 253 Pac. 1017; Woods v. Sand Springs R. R. Co., 124 Okla. 34, 254 Pac. 703.

In cases of this nature, the question of acceptance and delivery is to be determined largely by the intent of the parties at the time, and this intent is a question of fact to be determined by the jury from the evidence. The conduct, acts, and declarations of the parties may be given in evidence for this purpose. Garfield v. Paris, supra.

We think there is ample competent evidence in the record reasonably tending to support the verdict, and in this circumstance the verdict should not be set aside upon the ground of insufficiency of the evidence.

Among the several assignments presented are a number relative to the refusal of the court to give certain instructions offered by defendant, but since these questions, as stated in the brief of defendant, all revolve around, or go to the sufficiency of plaintiff's evidence, we deem it unnecessary to discuss them separately.

The judgment should be affirmed.

TEEHEE, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.