[No. 24913. Department Two. April 20, 1934.]

CHORNELIUS PEDERSON, *Respondent,* v. ADA M. JORDAN, *Appellant.*[1]

*Stratton & Kane,* for appellants.

*Elvin P. Carney,* for respondent.

GERAGHTY, J.—In this action, plaintiff sued to recover from defendant the balance due upon a promis-

[1]Reported in 32 P. (2d) 114.

sory note executed by defendant and her deceased husband. The case was tried to the court, and judgment rendered in favor of plaintiff. The defendant appeals.

In 1904, respondent gave to F. M. Jordan, deceased husband of the appellant, $21,000 to be lent by him for respondent's account upon the best security and interest to be had. It appears from the evidence that this money was left with Jordan to be lent to third persons, and respondent had no knowledge until after Jordan's death that any of it had been lent by Jordan to himself and wife.

The note in question was for $2,500, bore date September 27, 1904, and was signed by F. M. Jordan and Ada M. Jordan, by her attorney in fact, F. M. Jordan. At the time, Jordan was in the money lending and insurance business. He conducted the business under his own name. Prior to that time, in 1899, the appellant had executed in her husband's favor a power of attorney in the most general terms. This power of attorney was filed for record in the office of the auditor of King county shortly after its execution, and remained in force until formally revoked by appellant, by an instrument filed in the office of the auditor of King county January 17, 1931. Appellant's husband, F. M. Jordan, died insolvent January 21, 1931.

In 1905, C. S. Packer, a brother-in-law of Jordan, became a partner in the business, which was thereafter carried on under the firm name of F. M. Jordan & Company. The business was never incorporated. F. M. Jordan & Company continued to look after the loaning of respondent's money, and at semi-annual periods made interest payments to him, including interest on the note here in question. A credit of $1,300 was made upon the note by transferring the amount to another account. Payments were made by the checks

of F. M. Jordan & Company. After becoming a partner, Packer generally looked after the payments. F. M. Jordan retired from the business some seven or eight years before his death. Packer continued the business under the same name.

The note here involved, with other notes belonging to respondent, remained in the office. Packer attended to the collection of rents for F. M. Jordan, as well as for the separate property of appellant, but payments made upon the note were taken from the collections made for the husband. Respondent did not know until after Jordan's death of the existence of the note, or that his funds had not been lent to third persons by Jordan.

The appellant interposed the statute of limitations as a bar to respondent's right to recover. The execution of the note was not questioned, nor Jordan's authority to bind appellant under the power of attorney, but she contends that, conceding her obligation as an original party to the note, payments of interest and principal made by her husband, the joint obligor, did not toll the statute of limitations as to her. In support of her position, appellant relies principally upon the case of *Farmers & Mechanics Bank v. San Poil Consolidated Co.*, 126 Wash. 137, 217 Pac. 707. In that case, White was manager of the San Poil Co., and with the company and another, jointly executed the note involved in the case. A payment was made on the note on account of the San Poil Co. and with its check, by White. A receipt for the payment was taken by the San Poil Co. The court held that, while White, as manager of the company, made the payment on its behalf, as an individual he did not authorize or ratify it, and that the payment, under the circumstances, could not be held as against him to suspend

the operation of the statute. Discussing the principles of law applicable to the case, the court said:

"For many years it appears to have been the law of England that a payment made by one of several joint, or joint and several, makers of a promissory note would start the statute of limitations afresh as to all. This rule was modified by a legislative act to the effect that any such payment should operate to start anew the statute only as to the person actually making the payment. The law of England before the passage of this act is the law of a few of our states. This doctrine, however, was repudiated by this court in *Stubblefield v. McAuliff*, 20 Wash. 442, 55 Pac. 637, where we said:

" 'The rule enunciated by the later cases is that part payment by one person, being equivalent to a new contract based upon an old consideration, upon which a cause of action accrues at the time of the payment, binds only the person making the payment, or one whom he has authority to bind by a new contract to pay the balance.'

"So that, generally speaking, the rule in this state is that a payment made by one of two or more joint and several makers of a promissory note will start anew the running of the statute of limitations only as to the person making the payment. But circumstances may arise where, although payment was made by one co-maker, the intention was that it should be made for and its effects be binding upon the other makers. So that the rule adopted by this and many other states is that a payment made by one joint debtor shall affect the statute of limitations only as to him, unless such payment was 'authorized or ratified' by the other maker. *Bassett v. Thrall*, 21 Wash. 231, 57 Pac. 806; *Hanna v. Kasson*, 26 Wash. 568, 67 Pac. 271; *Perkins v. Jennings*, 27 Wash. 145, 67 Pac. 590; *Arthur & Co. v. Burke*, 83 Wash. 690, 145 Pac. 974. In some of the cases outside of this state it is said that a payment by one joint maker will not operate to toll the statute as to the other unless the payment was made by and with 'his knowledge, consent or ratification.' "

We think the circumstances in the case at bar bring it within the exception to the general rule noted above. The appellant's power of attorney vested in her husband full power to manage and control all her business affairs, and this power he exercised throughout his life. The authority, under which he executed the note on appellant's behalf originally, continued. He had authority to waive the statute of limitations, or could have executed a new note in renewal of the obligation.

The fact that the payments were made by Jordan & Co. out of Jordan's individual property is not at all determinative of the issue. He could very well have done this, having in mind an accounting between himself and wife. Everything he did in relation to the note was authorized in advance by appellant through her power of attorney.

In a supplemental brief filed after oral argument in this court, appellant contends there was no delivery of the note to respondent prior to Jordan's death. The note was first kept in Jordan's safe, and later, after Packer became a partner, in the safe of Jordan & Co. Its existence was known to Packer, and he was given instructions to make the payments upon it. Later, after Jordan retired from the business, and when Packer became the sole owner, the note remained in the office safe with Packer. We think there was a constructive delivery. *Irvin v. Harris,* 182 N. C. 647, 109 S. E. 867.

The judgment of the trial court will be affirmed.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.