CONSOLIDATED UNDERWRITERS,
Appellant,

v.

PENNSYLVANIA THRESHERMEN &
FARMERS MUTUAL CASUALTY IN-
SURANCE COMPANY, Appellee.

No. 17238.

United States Court of Appeals
Eighth Circuit.

Oct. 31, 1963.

John J. Alder, of Alder & Morrison,
Kansas City, Mo., for appellant.

James J. Amelung, of Holtkamp, Mil-
ler, Risch & Amelung, St. Louis, Mo.,
for appellee; Joseph Bott, Kansas City,
Mo., on the brief.

Before VAN OOSTERHOUT and
BLACKMUN, Circuit Judges, and
YOUNG, District Judge.

YOUNG, District Judge.

Appellant instituted this diversity ac-
tion against appellee to recover the sum
of $79,479.63, which was allegedly due
from appellee under a policy of liability
insurance issued by appellee to the Sub-
urban Motors, Inc., Kirkwood, Missouri
(hereinafter referred to as Suburban).
Appellee's liability insurance policy was
issued to Suburban extending coverage
for any automobile owned by Suburban
and used with the permission of Subur-
ban, provided that the automobile was
being used in connection with Subur-
ban's business operations. Appellant's
liability insurance policy was issued to
one Harold I. Krause, and the policy pro-
vided coverage to Krause for any auto-
mobile driven by him regardless of own-
ership; however, with respect to an au-
tomobile not owned by Krause, his in-
surance was only excess insurance.

A statement of agreed facts was filed
in the court below, and appellant and
appellee each filed a Motion for Summary
Judgment. The appellant's motion was
denied and the appellee's motion was
granted. Accordingly, judgment was en-
tered for appellee, and now appellant
has appealed the denial of his motion
and the judgment entered for appellee.
The material facts agreed to, and as stat-
ed by the trial judge below in his opin-
ion, are as follows:

In 1957, Suburban was engaged in the
sale of Ford automobiles in Kirkwood,

Missouri, and employed a salesman named H. W. Rinklin. On or about September 17th of that year, Suburban sold to Rinklin a new 1957 Ford automobile (which is the subject of this controversy) for his wife, Jane Rinklin. Rinklin paid to Suburban $250.00 in cash and executed a note and mortgage for the balance of the purchase price, which note and mortgage were sold by Suburban to a local trust company.

At the time of the delivery of the automobile, Suburban delivered a bill of sale and executed a regular form MMV-21 to Jane Rinklin. (MMV-21 is the form of bill of sale prescribed by the Missouri Commissioner of Motor Vehicle Registration.) Jane Rinklin secured license plates from a car previously owned by her and placed these plates on the new Ford. In order to avoid the payment of sales tax, she did not apply for a certificate of title or Missouri license plates, as required by Mo.Rev.Stat. § 301.020 (1949) V.A.M.S. She made three monthly installment payments on the note and mortgage to the local trust company, and drove the automobile approximately 4,000 miles.

At the time of the sale of the car, it was agreed between Suburban and Rinklin that if the new Ford transferred to Rinklin by Suburban were resold at a price in excess of the purchase price paid by Rinklin, the amount of the excess would be divided equally between Rinklin and Suburban. Later, the following November 29th, Rinklin found Harold I. Krause as a purchaser for this automobile. The profit on this sale to Krause amounted to $339.90, which was divided equally between Rinklin and Suburban. At the time of this transaction, the bill of sale and the MMV-21 which had been previously issued to Jane Rinklin were surrendered to Suburban and a new bill of sale and MMV-21 in the form prescribed by statute were issued by Suburban to Krause. Krause knew at this time that the Ford had been owned and driven by Jane Rinklin approximately 4,000 miles. Pursuant to

this transaction, Krause traded in a 1955 car and assigned the title to that car to Suburban. In addition, Krause gave a note and chattel mortgage to Suburban, which in turn Suburban sold to a local trust company; the amount received being credited to Rinklin's account with Suburban and applied against Rinklin's note and mortgage, thus liquidating any obligation by Rinklin.

On December 6, 1957, Krause, while operating the Ford acquired from Rinklin and Suburban, had a collision with another car, resulting in the death of Krause and injury to the occupants of the other car. Krause had not at that time applied for nor obtained a certificate of title from the State of Missouri on the automobile.

At the time of his death, Krause had a policy of liability insurance with appellant, and also a policy of collision insurance with another company. Krause also had a mortgage policy of life insurance issued in connection with the purchase of the automobile. The proceeds from this policy paid off the mortgage given by Krause on the car and thus liquidated Krause's obligation. Following Krause's death, his wife was appointed administratrix of his estate.

After the collision, Suburban took back the bill of sale that had been issued to Krause and applied for a certificate of title from the State of Missouri on or about January 15, 1958, in its own name, setting out that the automobile was "new" and "never registered." A certificate of title was duly issued to Suburban which was the first and only title which had been issued on the automobile. Later, Suburban sold the wreckage of the automobile, endorsed the title in blank, and credited the proceeds of the sale to the account of Krause's wife. Following the collision, and after claims were made against Krause's estate, appellant made timely demand upon appellee to assume and participate in the settlement negotiations and defense of the litigation, and to pay any judgment or settlements because of

the casualty and the alleged injuries and death. However, appellee refused to participate in any of the negotiations or transactions. Appellant effected a settlement of all such claims for the total amount now sued for.

The trial court rejected appellant's contention that at the time of the collision the automobile was owned by Suburban and was being driven with Suburban's permission and therefore covered by appellee's policy with Suburban. The trial court recognized that Suburban and the Rinklins had all violated the registration laws of Missouri. However, the court held that the automobile was not owned by Suburban at the time of the collision because when Krause purchased the automobile in good faith, paid the purchase price, received possession of the car and a bill of sale in accordance with the requirements of Mo.Rev.Stat. § 301.200 (1949), V.A.M.S., he became the owner of the car and upon presentation of such bill of sale he would have been entitled to a certificate of ownership. Accordingly, judgment was entered for appellee, and appellant appeals, contending that under the Missouri automobile registration laws Suburban "owned" the automobile driven by Krause at the time of the collision and the trial court erred in its construction of the appropriate Missouri statutes.

This case revolves around the principal question of whether or not Suburban "owned" the automobile at the time of the fatal collision. Unless Suburban did "own" the automobile, appellant's cause here must fail. Determination of exactly who did own the automobile at the time of the fatal collision is not before this court; only whether or not Suburban "owned" the automobile.

There are two sections of the automobile registration laws dealing with the sale of motor vehicles in Missouri. Mo. Rev.Stat. § 301.200 (1949) V.A.M.S., defines the procedure in connection with the sale of new motor vehicles and Mo. Rev.Stat. § 301.210 (1949) V.A.M.S., deals with the transfer of used cars.

Mo.Rev.Stat. § 301.200 (1949) V.A. M.S., provides as follows:

"1. In the case of dealers, a separate certificate of ownership, either of such dealer's immediate vendor or of the dealer himself, shall be required in the case of each motor vehicle in his possession, and the director of revenue shall determine the form in which application for such certificate of ownership and assignment shall be made, in case forms differing from those used for individuals are, in his judgment, reasonably required; provided, however, that no such certificate shall be required in the case of new motor vehicles or trailers sold by manufacturers to dealers.

"2. Dealers shall execute and deliver bills of sale in accordance with the forms prescribed by the director of revenue for all new cars sold by them. On the presentation of a bill of sale, executed in the form prescribed by the director of revenue, by a manufacturer or a dealer for a new car sold in this state, a certificate of ownership shall be issued."

Mo.Rev.Stat. § 301.210 (1949) V.A. M.S., provides as follows:

"1. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall indorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the director of revenue, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer.

"2. The buyer shall then present such certificate, assigned as aforesaid, to the director of revenue, at the time of making application for

the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, the fee therefor being one dollar.

\*　　\*　　\*　　\*　　\*

"4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

Appellant contends that the trial court erred in ruling that Suburban could issue a valid second MMV-21, bill of sale, under § 301.200(2) since the authority of the statute permitted Suburban, as a dealer, to issue such a bill of sale only on "new cars." The plain meaning of this section is that a dealer may transfer a new car by executing and delivering a bill of sale in accordance with forms prescribed by the Director of Revenue, which is a form MMV-21. It thereafter becomes incumbent upon the purchaser to secure a certificate of ownership within fifteen days, as required by Mo.Rev.Stat. § 301.140 (1949) V.A.M.S. But regardless of whether the purchaser obtains the certificate of ownership from the Director of Revenue, the initial transfer from the dealer to the purchaser is valid by virtue of the execution and delivery of a bill of sale together with the form MMV-21, in accordance with Mo.Rev.Stat. § 301.200(2) (1949) V.A.M.S. Thus, ownership has been transferred from the dealer to the purchaser. On the other hand, if the car were used, the dealer would have to obtain a certificate of ownership before the transfer to the purchaser would be valid in accordance with Mo.Rev.Stat. § 301.210 (1949) V.A.M.S. Here, therefore, the determination of whether the automobile transferred by Suburban to Krause was a "new" or a "used" car is crucial to the argument advanced by appellant. If the automobile was "new," then the transfer was in accordance with Mo.Rev.Stat. § 301.200 V.A.M.S. and thus valid. If the car was "used," as the appellant contends, then the transfer was in violation of Mo.Rev.Stat. § 301.210 (1949) V.A.M.S., and according to section four of this statute any sale by Suburban to Krause would be "fraudulent and void"; ergo, as appellant urges, Suburban "owned" the automobile at the time of the fatal collision.

Appellant argues that the automobile was in fact a used car and hence the transaction between Suburban and Krause was in violation of Mo.Rev.Stat. § 301.210 (1949) V.A.M.S., therefore making this transaction "fraudulent and void" and thus leading to the conclusion that Suburban "owned" the automobile. But this does not necessarily follow. Appellant would isolate this one transfer between Suburban and Krause to argue that Suburban "owned" the automobile at the time of the fatal collision.

When Suburban transferred the automobile to Rinklin in September 1957, the transfer was made in accordance with Mo.Rev.Stat. § 301.200 (1949) V.A.M.S. The Rinklins violated Mo.Rev.Stat. § 301.140 (1949) V.A.M.S., by failing to secure a certificate of ownership. Nevertheless the initial transfer was valid. Two months later, Mr. Rinklin found Krause as a purchaser and then Mrs. Rinklin attempted to divest herself of ownership in order that Suburban might transfer the automobile as a new car to the purchaser Krause. The Rinklins had never complied with the automobile registration laws, and, assuming arguendo the theory advanced by appellant, i. e., the automobile having been driven some 4,000 miles was a "used" car, still the transfer by Mrs. Rinklin back to Suburban did not divest her of ownership since a certificate of ownership must be

obtained in the case of "used" cars; otherwise such transfer is "fraudulent and void." Therefore, even if we follow appellant's theory, Suburban did not reacquire title to the automobile, and, consequently, Suburban did not, as appellant urges, "own" the automobile at the time the transfer was made to Krause; nor for this reason could Suburban have owned the automobile at the time of the fatal collision.

Appellant further contends that when Suburban transferred ownership to Mrs. Rinklin it exhausted all rights under Section 301.200(2) and transfers thereafter had to comply with Section 301.210. This latter section requires a certificate of title, and failure to comply creates a void transaction which does not transfer legal ownership of title. As has been pointed out, it is this contention which completely precludes the conclusion that Suburban owned the automobile at the time of the fatal collision. If, as appellant here says, Suburban transferred ownership to Mrs. Rinklin and exhausted all rights under Section 301.200, then all subsequent transfers which admittedly did not comply with Section 301.210 were void and thus Suburban could not have at any point reacquired ownership of the automobile. Of course, this contention is based on appellant's position that the automobile was "used," and again it should be pointed out that even if the car were used, Suburban, under the theory advanced by appellant, could not have owned the automobile at the time of the fatal collision.

Appellant admits in its brief with admirable candor that the argument upon which it bases its contention that Krause did not acquire valid title ownership from Suburban also means that "Suburban failed to receive valid title ownership from Mrs. Rinklin." It further admits that if so, appellant must fail—yet it cites several considerations why it believes, nevertheless, that it should prevail. These circumstances are: Suburban's knowledge that Mrs. Rinklin had not applied for a certificate of title;

the MMV-21 given by Suburban to Krause which stated in essence that Suburban certified it was the legal owner of the automobile transfer; non-compliance with Mo.Rev.Stat. § 301.200 (1949) V.A.M.S., the preconceived arrangement whereby Suburban was to share in the profits of any sale by Rinklin of the automobile; and the fact that Suburban took back the car after the fatal collision and applied for a certificate of title from the State of Missouri. Appellant's attempt to void its concession by pointing to these circumstances is not well taken in view of the abundance of Missouri cases which appellant itself has cited, all of which indicate that the Missouri Automobile Registration Law has been rigidly applied in determining whether a particular transaction constitutes a transfer of title ownership, hence limiting any consideration of estoppel, mistakes, etc. E.g. see Mackie and Williams Food Store v. Anchor Cas. Co., 216 F.2d 317, 322 (8th Cir. 1954). See also, Wills v. Shepherd, 241 Mo.App. 102, 231 S.W.2d 843, 847 (K.C.Ct.App. 1950), in which estoppel was denied.

Thus, after conceding that Suburban never received a valid title from Mrs. Rinklin, appellant would have the Court relax the automobile registration laws and consider these surrounding circumstances to permit the passage of title of the automobile. This would violate the policy of the registration law, as appellant claims the trial court did. We believe that appellant's contention that these surrounding circumstances are controlling is without merit.

The trial court held that although the automobile in question was a "used car" mechanically it was a "new car" for the purposes of the registration statutes, as it was one for which a certificate of ownership had never been issued, and that the bill of sale by the dealer vested the ownership in Krause and placed him in a position to legally obtain a certificate of title.

Admittedly this question has not been decided in Missouri. However, since ap-

pellant cannot prevail even if the automobile be found to be a "used car" within the meaning of the term as used in the Missouri Automobile Registration Law, and this being dispositive of this appeal, it is unnecessary to proceed further and consider the question of what constituted a "new" and a "used" car as these terms appear in the registration law.

The trial court is, therefore,

Affirmed.