**Helen GALEMORE, Plaintiff-Respondent,**

v.

**MID–WEST NATIONAL FIRE AND CASUALTY INSURANCE COMPANY, a corporation, Defendant-Appellant.**

No. 8845.

Springfield Court of Appeals.

Missouri.

June 5, 1969.

Manuel Drumm, Sikeston, for defendant-appellant.

Joslyn & Joslyn, T. B. Russell, Charleston, for plaintiff-respondent.

STONE, Judge.

In this court-tried action at law, plaintiff Mrs. Helen Galemore obtained a judgment in the sum of $3,647.90 for damage to a 1966 Dodge Polara sedan (hereinafter referred to as the Dodge) within the $50 deductible collision coverage afforded by a policy issued by defendant Mid-West National Fire and Casualty Insurance Company. On this appeal by defendant, the only issue is as to whether or not plaintiff had an insurable interest in the Dodge at the time of accident.

At all times herein material, plaintiff was the wife of L. E. Galemore, Jr., who was the president of Galemore Motor Co., Inc., the franchised dealer in Charleston, Missouri, for Chrysler, Dodge and Plymouth automobiles. The transaction under scrutiny occurred in the dealer's place of business on Wednesday, January 11, 1967, when the Dodge, a new automobile, purportedly was sold to plaintiff. The sale price of the Dodge was $3,897.90 which was paid (so plaintiff's evidence showed) by cash in the sum of $3,057.36 and by a trade-in allowance of $840.54 for plaintiff's 1965 Chrysler sedan. The Chrysler was one of two automobiles owned by plaintiff, both of which were described in defendant's policy then affording $50 deductible collision coverage on those two automobiles, and on any automobile replacing either of them, for a term expiring on June 1, 1967.

From the testimony of plaintiff and her husband and the exhibits received in evidence, the trial court reasonably might have found the following state of facts. Plaintiff came to the dealer's place of business on January 11, 1967, in response to a telephone call informing her that the Dodge "was ready" for delivery. The dealer then assigned to her the *"Manufacturer's Statement of Origin"* in which Chrysler Corporation certified on the face of the instrument that the Dodge was a new automobile and the dealer certified in the assignment on the reverse side thereof that "the vehicle is new and has not been registered in this or any other state." (All emphasis herein is ours.) *"Car Invoice No. 4677"* on the dealer's printed form was completed evidencing the sale to plaintiff on January 11, 1967, of the Dodge (specifically described and identified in the invoice) for the "price" of $3,897.90 paid as hereinbefore particularized. On the same date, plaintiff executed in quintuplicate form MMV–1–R2, *"a combination bill of sale * * * and form for applying for title and/or new or renewal license * *"* prescribed by the director of revenue, in which it was certified by both the dealer and plaintiff that the Dodge (specifically described and identified therein) had been purchased by plaintiff for the aforesaid "price" of $3,897.90, that there had been a "trade-in" allowance of $840.54, and that Citizens Bank of Charleston had a "first lien" on the Dodge. While at the dealer's place of business that day, plaintiff also executed *"a note to the Citizens Bank"* for "the difference," i. e., $3,057.36, and (as suggested inferentially) an appropriate security agreement. This note was still unpaid at the time of trial on April 22, 1968.

When the signing had been completed, plaintiff took actual physical possession of the Dodge and drove it home, but all of the above documents were left at the dealer's place of business. As plaintiff's husband explained, "her being my wife," throughout their married life the "papers" pertaining to automobiles owned by her "generally" had been kept "at the dealership"—"the bookkeeper usually does all the running for her." While plaintiff's husband was driving the Dodge on a pleasure trip two days later, to wit, on Friday, January 13, disaster struck when he "was crowded off the levee close to Cairo, Illinois," as a result of which he sustained severe personal injuries and the Dodge was damaged so extensively that its reasonable market value immediately after the accident was no more than $50, according to plaintiff's husband who offered the only testimony on this subject.

The sole point in defendant's brief is that the trial court erred in entering judgment for plaintiff "because the evidence clearly proved that plaintiff was not the owner of the said 1966 Dodge under the laws of Missouri and thus did not have an insurable interest" therein. In support of this contention, counsel cite eight cases dealing with a variety of situations but having one factual characteristic in common, i. e., each in some manner involved the attempted transfer of ownership of a *used* motor vehicle, and an additional three cases,[1] in each of which the court was concerned as to the delivery vel non of a *deed conveying real estate*. The eight cases [2] and others [3] graphically reflect strict judicial enforcement of the long-settled rule that the attempted sale of a motor vehicle previously *"registered"* (and accordingly titled—see § 301.190, subsecs. 1 and 4, as amended Laws 1965, p. 470), even though accompanied by payment and physical exchange of possession, is *"fraudulent and void,"* as is specifically declared by § 301.210(4),[4] and neither passes title to the buyer nor invests him with an insurable interest in the vehicle unless, as a reasonably contemporaneous part of the transaction, the previously-issued certificate of ownership with a properly-completed assignment thereof by the seller is delivered to the buyer. (Except as otherwise stated, all statutory references are to RSMo 1959, V.A.M.S.)

However, defendant's cited cases involving the attempted transfer of ownership of *used* motor vehicles neither reach nor rule the case at bar. For, it is clear from the language of § 301.210 itself, as the courts have recognized frequently,[5] that the provisions of that statute are applicable *only* to sales of motor vehicles previously "registered," i. e., to sales of *used* motor vehicles. The procedure to be followed in connection with sales of *new* motor vehicles by dealers is outlined in § 301.200,[6]

1. Galloway v. Galloway, Mo., 169 S.W.2d 883; Zumwalt v. Forbis, 349 Mo. 752, 163 S.W.2d 574; Phillips v. Phillips, 50 Mo. 603.

2. Sabella v. American Indemnity Co., Mo. (banc), 372 S.W.2d 36, 40(2); State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87(1, 2), 37 A.L.R. 1456; Public Finance Corp. of Kansas City v. Shemwell, Mo.App., 345 S.W.2d 494, 497-498 (2); Haynes v. Linder, Mo.App., 323 S.W.2d 505, 511(10), 512(12); Bordman Investment Co. v. Peoples Bank of Kansas City, Mo.App., 320 S.W.2d 72, 78(7); Riss & Co. v. Wallace, 239 Mo.App. 979, 195 S.W.2d 881, 886(9); Mathes v. Westchester Fire Ins. Co. of New York, Mo. App., 6 S.W.2d 66, 68(2, 3); Mackie and Williams Food Stores, Inc. v. Anchor Casualty Co., 8 Cir. (Mo.), 216 F.2d 317, 321(4).

3. State v. Glenn, Mo., 423 S.W.2d 770, 774(1-3); Commercial Credit Corp. v. Blau, Mo., 393 S.W.2d 558, 563(1, 2); Still v. Travelers Indemnity Co., Mo., 374 S.W.2d 95, 99(1); Citizens Discount and Investment Corp. v. Wood, Mo.App., 435 S.W.2d 717, 721(1); Ferm v. Miller Pontiac Co., Mo.App., 407 S.W.2d 55, 57(2); Kahn v. Lockhart, Mo.App., 392 S.W.2d 30, 34(3); Moore v. State Farm Mutual Automobile Ins. Co., Mo.App., 381

S.W.2d 161, 164-165(1, 2); Galati v. New Amsterdam Cas. Co., Mo.App., 381 S.W.2d 5, 7(1).

4. "It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer *registered under the laws of this state*, unless at the time of delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer *registered under the laws of this state*, without the assignment of such certificate of ownership, shall be *fraudulent and void*."

5. Stephen Burns, Inc. v. Trantham, Mo. App., 305 S.W.2d 66, 69(1); Inland Discount Corp. v. St. Louis Auto Auction Barn, Mo.App., 303 S.W.2d 185, 187(1); Mallory Motor Co. v. Overall, Mo.App., 279 S.W.2d 532, 535(6); Vetter v. Browne, 231 Mo.App. 1147, 1150, 85 S.W. 2d 197, 198; Federated Mutual Imp. & Hdwe. Ins. Co. v. M.F.A. Mutual Ins. Co., D.C.Mo., 211 F.Supp. 247, 250.

6. Mallory Motor Co., supra note 5, 279 S.W.2d at 534; Inland Discount Corp., supra note 5, 303 S.W.2d at 187; Consolidated Underwriters v. Pennsylvania Threshermen & Farmers Mutual Cas. Ins. Co., 8 Cir. (Mo.), 324 F.2d 21, 23-24; Federated Mutual Imp. & Hdwe. Ins. Co., supra note 5, 211 F.Supp. at 249.

the pertinent portion of which reads as follows: "2. Dealers shall execute and deliver bills of sale in accordance with forms prescribed by the director of revenue for all new cars sold by them. On the presentation of a bill of sale * * * by a manufacturer or a dealer for a new car sold in this state, a certificate of ownership shall be issued." Of course, the quoted portion of § 301.200(2) plainly imposes upon a dealer the obligation to execute and deliver to the buyer a bill of sale for a *new* automobile and, for his failure so to do, *he* might suffer unfortunate personal consequences. § 301.440. But *it is* striking and significant that, in sharp contrast with the legislative declaration in § 301.210(4) that any attempted sale of a *used* automobile without assignment of the certificate of ownership therefor *"shall be fraudulent and void,"* there is no statutory provision avoiding the sale of a *new automobile for the* dealer's failure to execute and deliver a bill of sale. Federated Mutual Imp. & Hdwe. Ins. Co. v. M.F.A. Mutual Ins. Co., D.C.Mo., 211 F.Supp. 247, 250(1, 2).

 Insofar as the transfer of title is concerned, we think instant defendant "exaggerates the effect of a bill of sale." In re Oberman's Estate, Mo.App., 281 S.W. 2d 549, 554. It has long been settled that: "As a matter of law, a bill of sale is not necessary to pass the title to personal property. A delivery of the possession of goods under a contract to purchase passes the title, and from that time they belong to the vendee and are his risk." [7] Hence a bill of sale is only *evidence* of a transfer of title and is in no wise necessary thereto.[8] The cited case law in this jurisdiction

is in complete harmony with § 400.2–401, subsec. (2), of the Uniform Commercial Code (Laws 1963, p. 530), which runs down the same legal channel: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *."

 We conclude that the dealer's execution and delivery of a bill of sale for the Dodge was not a prerequisite to the passing of title to plaintiff [Federated Mutual Imp. & Hdwe. Ins. Co., supra, 211 F.Supp. at 252(6)]; that title passed to her when she paid the sale price of the Dodge, took actual physical possession of the automobile, and drove it out of the dealer's place of business on January 11, 1967 [see again cases cited marginally in notes 7 and 8]; and that the vesting of title in her, as purchaser, was not deferred until form MMV–1–R2, the combination bill of sale and application for title completed and signed on that date, was transmitted to the director of revenue or until a certificate of ownership had been issued to her. Vetter v. Browne, 231 Mo.App. 1147, 85 S.W.2d 197(1). Cf. Melugin v. Imperial Casualty & Indemnity Co. of Omaha, Neb., Mo.App., 344 S.W.2d 144, 148(6); Crawford v. General Exchange Ins. Corp., Mo. App., 119 S.W.2d 458(2–4).

 Even if (contrary to our stated holding) the execution and delivery of a bill of sale were necessary to pass title to the Dodge, we are of the opinion that the

---

7. Gatzweiler v. Morgner, 51 Mo. 47, 49(1); Mallory Motor Co., supra note 5, 279 S.W.2d at 534(1); Federated Mutual Imp. & Hdwe. Ins. Co., supra note 5, 211 F.Supp. at 252. See W. W. Kendall Boot & Shoe Co. v. Bain, 46 Mo.App. 581, 592 (6); Poplin v. Brown, 200 Mo.App. 255, 265, 205 S.W. 411, 414; T. J. Moss Tie Co. v. Stamp, Mo.App., 7 S.W.2d 407, 409 (2).

8. In re Oberman's Estate, Mo.App., 281 S.W.2d 549, 554(16); Gatzweiler, supra note 7, 51 Mo. at 49(1); W. W. Kendall Boot & Shoe Co., supra note 7, 46 Mo. App. at 592(6); Poplin, supra note 7, 200 Mo.App. at 265, 205 S.W. at 414; 46 Am.Jur.Sales § 34, p. 226.

trial court reasonably might have found such execution and delivery. The uncontradicted evidence was that form MMV–1–R2, identified and designated on the reverse side thereof as "a combination bill of sale * * * and form for applying for title and/or new or renewal license * *," which was "the form of bill of sale prescribed" by the director of revenue [Consolidated Underwriters v. Pennsylvania Threshermen & Farmers Mutual Cas. Ins. Co., 8 Cir. (Mo.), 324 F.2d 21, 22], was executed on behalf of the dealer before a notary public on January 11, 1967, and the truth of the facts stated therein was certified and confirmed by plaintiff's signature thereon. Hence, there was ample proof that the dealer did execute a bill of sale to the Dodge.

■ The acts and facts which will constitute a delivery vary in different classes of cases and depend upon the character, quantity and condition of the property, as well as the circumstances of the particular case. Morel v. Solomon, 203 Miss. 356, 35 So.2d 314, 315(1); National Bank of Commerce v. Chicago, B. & N. R. Co., 44 Minn. 224, 46 N.W. 342, 344, 9 L.R.A. 263; 26A C.J.S. Delivery, p. 165. What constitutes delivery largely depends on the intent of the parties. Miller v. Hospelhorn, 176 Md. 356, 4 A.2d 728, 733; Van Drimmelen v. Converse, 190 Iowa 1350, 181 N.W. 699, 700(3). "Delivery, in the modern acceptation of the term, means the manifestation of an intention that the instrument in question shall have operative effect, however that intention may be indicated." Central States Building & Loan Ass'n. v. Bitler, 149 Kan. 349, 87 P.2d 631, 632(1).

■ Delivery may be either actual or constructive. School Dist. of City of Kansas City v. Stocking, 138 Mo. (banc) 672, 688, 40 S.W. 656, 660, 37 L.R.A. 406; Welch & Harvey v. Dameron, 47 Mo.App. 221, 227–228(2); Cownie v. Local Board of Review in and for City of Des Moines, 235 Iowa 318, 16 N.W.2d 592, 598(6). Constructive delivery is a general term, comprehending all those acts which, although not truly conferring a real possession on the vendee, have been held, by construction of law, equivalent to acts of real delivery. Black's Law Dictionary (4th Ed.), p. 515. It has been defined in this jurisdiction thusly: "A constructive delivery is when, without actual transfer of the goods or their symbol, the conduct of the parties is such as to be inconsistent with any supposition [other] than that there has been a change in the nature of the holding * *." Swafford v. Spratt, 93 Mo.App. 631, 635, 67 S.W. 701, 702. See Bass, Maxwell & Co. v. Independent Gin Co., 140 Okl. 80, 282 P. 635, 637(4). Numerous cases [9] involving instruments other than conveyances of real estate [10] declare and demonstrate that there may be constructive delivery of such instruments even without manual transfer of possession.

In the case at bar, form MMV–1–R2, the combination bill of sale and application for title to the Dodge, necessarily was delivered manually to plaintiff and was in her actual possession briefly as she signed the certification of that form. Then it was returned to the dealer because, as we have noted, throughout her married life the "papers" pertaining to automobiles owned by her "generally" had been kept

---

**9.** Welch & Harvey v. Dameron, 47 Mo.App. 221, 227–228(2); School Dist. of City of Kansas City v. Stocking, 138 Mo. (banc) 672, 688, 40 S.W. 656, 660(7), 37 L.R.A. 406; Miller v. Hospelhorn, 176 Md. 356, 4 A.2d 728, 733; Pederson v. Jordan, 177 Wash. 379, 32 P.2d 114, 115 (2); Central States Building & Loan Ass'n v. Bitler, 149 Kan. 349, 87 P.2d 631, 632(1); Behrens v. Kruse, 132

Minn. 69, 155 N.W. 1065, 1066(2), 156 N.W. 1; Cartwright v. Coppersmith, 222 N.C. 573, 24 S.E.2d 246, 250(5).

**10.** A bill of sale of personalty is not of the same legal significance and standing as a conveyance of real estate. In re Oberman's Estate, supra note 8, 281 S.W.2d at 554–555; Poplin, supra note 7, 200 Mo. App. at 265, 205 S.W. at 414(7).

"at the dealership"—"the bookkeeper usually does all the running for her." For that matter, the evidence showed that the dealer "sometimes" handled "the application for title, including mailing to the state," for other customers. According to plaintiff's husband, the completed form MMV–1–R2 for the Dodge was not mailed because "usually one time a week we mail them [such forms] out" and, with the Dodge so completely demolished only two days later, there "wouldn't have been any reason" to get a title for it. Having in mind that each case must stand on its own facts [Miller v. Hospelhorn, supra, 4 A.2d at 733] and expressly limiting our holding to the case at bar which presents a unique factual situation involving the husband and wife relationship, we believe that the trier of the facts reasonably might have found that the bill of sale for the Dodge, i. e., the completed form MMV–1–R2, was constructively delivered to plaintiff on January 11, 1967, and thereafter for her convenience was held by the dealer as her agent subject to her direction and control.

With no specific findings of fact requested or made, all factual issues were ruled in favor of plaintiff by the general finding and judgment for her. V.A.M.R. 73.01(b); § 510.310(2); McCullough v. Newton, Mo., 348 S.W.2d 138, 142(2); Listerman v. Day & Night Plumbing & Heating Service, Inc., Mo.App., 384 S.W.2d 111, 120(12). And although, in this court-tried action, it is our duty to review the case upon both the law and the evidence as in suits of an equitable nature, we are directed to accord due regard to the superior opportunity of the trial court to judge of the credibility of the witnesses, and we are enjoined from setting aside the judgment nisi unless it is clearly erroneous. V.A.M.R. 73.01(d); § 510.310(4); Schroeder v. Prince Charles, Inc., Mo., 427 S.W.2d 414, 420(7); Rothenhoefer v. City of St. Louis, Mo., 410 S.W.2d 73, 75(2); Sanderson v. Richardson, Mo.App., 432 S.W.2d 625, 630(5).

Appropriate respect for the foregoing principles dictates affirmance of the judgment for plaintiff. It is so ordered.

HOGAN, P. J., and TITUS, J., concur.