**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

v.

**Jeanne C. ALEXANDER, Administratrix of the Estate of Samuel N. Alexander, Deceased, and Marilyn Schaefer, an Incompetent, by and through her guardian, Johanna Schaefer, Defendants,**

and

**American Insurance Company, Intervenor.**

No. 70 C 104(2).

United States District Court, E. D. Missouri, E. D.

Nov. 23, 1970.

Lashly, Caruthers, Rava, Hyndman & Rutherford, St. Louis, Mo., for plaintiff.

Wm. A. Peterson, Rasse & Rasse, Marshall, Mo., for defendant Jeanne C. Alexander.

Geo. R. Gerhard, St. Louis, Mo., for defendant Marilyn Schaefer, etc.

Carl Gaertner, Heneghan, Roberts & Godfrey, St. Louis, Mo., for intervenor.

## MEMORANDUM

MEREDITH, District Judge.

This action is brought by the plaintiff, who seeks a declaratory judgment that the insurance policy issued by plaintiff to Classic Cars, Ltd., does not render it liable under the aforesaid policy to defend or provide coverage to the estate of Samuel N. Alexander. The case has been submitted to the Court on stipulation of facts and the briefs of parties.

The parties have agreed to the following stipulation of facts.

Plaintiff, Insurance Company of North America, is a corporation organized and existing under the laws of the State of Pennsylvania, with its home office and principal place of business in Philadelphia, Pennsylvania, and authorized to do business in the State of Missouri as a liability insurance company. Intervenor, the American Insurance Company, is a corporation organized and existing under the laws of the State of New Jersey, with its home and principal place of business in Newark, New Jersey, and is authorized to do business in the State of Missouri as a liability insurance company.

Defendant Jeanne C. Alexander is a resident of Boone County, Missouri, and is the administratrix of the estate of Samuel N. Alexander, deceased.

Defendant Marilyn Schaefer and her guardian are residents of Cole County, Missouri.

Charles D. Schmitt is a resident of St. Louis, Missouri, and is and was at all times mentioned doing business as Classic Cars, Ltd. A Missouri Automobile Dealer's Registration Certificate is and was at all times mentioned issued to "Classic Cars, Ltd., 3500 South Kingshighway, St. Louis, Missouri."

The amount in controversy in this case exceeds the sum of Ten Thousand Dol-

lars ($10,000.00), exclusive of interest and costs, and jurisdiction in this case is based upon diversity of citizenship. Venue is proper in the Eastern Division of the Eastern District of Missouri under 28 U.S.C. § 1391(a) on the ground that the claim arose in the City of St. Louis, Missouri; the insurance policies were written in the City of St. Louis, Missouri; the automobile collision herein referred to occurred in the City of St. Louis, Missouri; and the suit brought by defendant Schaefer against defendant Alexander is now pending in the Circuit Court of the City of St. Louis, Missouri.

On October 16, 1965, Charles Stuart Motors of Miami, Florida, sold and transferred to Classic Cars, Ltd., a 1964 Jaguar automobile, manufacturer's number RA 35789. Under the heading "Form No. 1, Transfer of Title", on the reverse side of the Florida Certificate of Title, the endorsement of title from Charles Stuart Motors to Classic Cars, Ltd., was duly made and acknowledged before a notary public. Possession of the automobile and the certificate so endorsed were delivered to Classic Cars, Ltd., prior to December 24, 1965.

On December 24, 1965, Samuel N. Alexander, since deceased, agreed to purchase the Jaguar automobile. On that date Alexander sat with Henry Swetman, General Manager of Classic Cars, Ltd., at a desk at the premises of Classic Cars, Ltd., and executed the following documents:

1. Purchaser's Statement.

2. Original of Retail Installment Contract.

3. Promissory Note in the amount of $3,416.04, payable to the order of Classic Cars, Ltd., in thirty-six (36) monthly installments of $94.-89.

4. Check in the amount of $1,000.00.

5. "State of Missouri Application for Title and/or License", hereinafter referred to as Missouri Application for Title.

On December 24, 1965, Henry Swetman on behalf of Classic Cars, Ltd., executed the following documents:

1. Florida Certificate of Title under the heading "Reassignment by Licensed Dealer", endorsed to Alexander on the reverse side and duly acknowledged before a notary public.

2. "Transfer and Warranty of Title By Registered Dealer", executed on the reverse side of the Missouri Application of Title and duly acknowledged before a notary public.

3. An invoice of the sale of the car.

4. Original Retail Installment Contract signed on the face thereof.

It was agreed that Tower Grove Bank and Trust Company would provide the financing of the unpaid balance of the purchase and that the designated monthly payments would be made by Alexander to Tower Grove Bank and Trust Company.

Mr. Swetman, while seated at the desk with Alexander, showed him the Florida Certificate of Title, in its present form, and stated that he would take the Retail Installment Contract, the Promissory Note, and the endorsed Florida Certificate of Title to the bank. Mr. Swetman did not hand the Florida Certificate of Title to Alexander.

On December 24, 1965, Swetman retained:

1. Florida Certificate of Title with an endorsement to Samuel N. Alexander on the back.

2. Purchaser Statement executed by Samuel N. Alexander.

3. The original of the Retail Installment Contract.

4. The Promissory Note.

5. Check in the amount of $1,000.00.

6. Two copies of the Missouri Application for Title.

7. Copy of sales invoice.

Samuel N. Alexander received:

1. Copy of the Retail Installment Contract.
2. Copy of the Promissory Note.
3. Original and two copies of Missouri Application for Title.
4. Original of the sales invoice.

At no time on December 24, 1965, was the Florida Certificate of Title in the physical possession of Alexander. Alexander did not take the Florida Certificate with him when he left the premises of Classic Cars, Ltd., on December 24, 1965.

On December 25, 1965, the original of the "Car Sales Contract" was signed by Samuel N. Alexander and Charles D. Schmitt on behalf of Classic Cars, Ltd., and the 1964 Jaguar was delivered to Alexander at the premises of Classic Cars, Ltd. Alexander did not receive the Florida Certificate of Title.

On December 26, 1965, Henry Swetman delivered to Tower Grove Bank and Trust Company:

1. Florida Certificate of Title.
2. Original of Retail Installment Contract.
3. Promissory Note.
4. Two copies of Missouri Application for Title.

The transaction between Tower Grove Bank and Trust Company and Charles D. Schmitt, doing business as Classic Cars, Ltd., consisted of assignment of the Retail Installment Contract and endorsement of the Promissory Note on the reverse side, and payment by the bank to Classic Cars, Ltd., of the discounted amount of the note. The bank then was to hold the paper and collect the monthly payments. In the event of default by the purchaser, the bank, upon repossession of the automobile and presentation of it to Classic Cars, Ltd., was entitled to be repaid by Classic Cars, Ltd., the unpaid balance of the note.

Tower Grove Bank and Trust Company forwarded one copy of the Missouri Application for Title to the Director of Revenue of the State of Missouri, together with the Florida Certificate of Title and $1.00 fee, for a Missouri title to the automobile in the name of Samuel N. Alexander. On January 4, 1966, the Missouri Director of Revenue issued a certificate of title showing the Jaguar to be registered in the name of Samuel N. Alexander, with Tower Grove Bank and Trust Company as first lien holder. This certificate was mailed to the lien holder by the Director of Revenue and remained in the bank's collateral file until after February 8, 1966.

On January 28, 1966, Alexander paid to Tower Grove Bank and Trust Company the first installment on the promissory note in the amount of $94.89, due February 1, 1966. Alexander did not purchase fire, theft or collision insurance as required by the provisions of the Retail Installment Contract.

On February 8, 1966, Marilyn Schaefer was riding as a passenger in the Jaguar automobile while it was being operated by Alexander. The automobile was involved in a collision with a truck at or near the intersection of Skinker and Lindell Boulevard in the City of St. Louis, Missouri, resulting in serious and permanent injury to Marilyn Schaefer. Samuel N. Alexander died March 9, 1966.

After the collision of February 8, 1966, Classic Cars, Ltd., took possession of the wrecked Jaguar automobile and paid the unpaid balance of the note owed to Tower Grove Bank and Trust Company. Tower Grove Bank and Trust Company delivered the Missouri Certificate of Title to Classic Cars, Ltd. After receipt of the title, Henry Swetman placed on the reverse side of the certificate, the name "Classic Cars, Ltd.," as assignee, and wrote in his own handwriting on the line provided for signature of seller "Samuel N. Alexander". A "Repossessed Title" in the name of Classic Cars, Ltd., was issued by the Department of Revenue on May 10, 1966.

Marilyn Schaefer has, since the collision been adjudged an incompetent. Johanna Schaefer has been appointed

guardian of Marilyn Schaefer by the Probate Court of Cole County, Missouri. Through her duly appointed guardian, Marilyn Schaefer has brought suit against the estate of Samuel N. Alexander.

George R. Gerhard, attorney for Johanna and Marilyn Schaefer in this suit, has made demand upon the liability insurance carrier of Classic Cars, Ltd., for coverage of Samuel N. Alexander, stating his intention to attempt to establish coverage under the aforesaid policy on the ground that Alexander was a permissive user of the aforesaid automobile under the said liability insurance policy. Said letter of demand is dated November 19, 1969, and was first brought to the attention of the Insurance Company of North America, plaintiff herein, during the week of January 5, 1970.

Similar demand was made upon the liability insurance carrier of Tower Grove Bank and Trust Company by letter dated November 19, 1969, and was first brought to the attention of the American Insurance Company on December 11, 1969.

Defendant, Marilyn Schaefer, contends that since Alexander did not have physical possession of a title to the Jaguar automobile when he took possession of the vehicle itself, the sale to him was invalid and he became a permissive user as to both Classic Cars, Ltd., and Tower Grove Bank and Trust Company.

The statutes of Missouri make the following requirements relating to the ownership and transfer of title of motor vehicles in Missouri:

301.190. "1. No certificate of registration of any motor vehicle or trailer, or number plate therefor, shall be issued by the director of revenue unless the applicant therefor shall make application for and be granted a certificate of ownership of such motor vehicle or trailer, or shall present satisfactory evidence that such certificate has been previously issued to the applicant for such motor vehicle or trailer. Application shall be made upon a blank form furnished by the director of revenue and shall contain a full description of the motor vehicle or trailer, manufacturer's or other identifying number, together with a statement of the applicant's source of title and of any liens or encumbrances on the motor vehicle or trailer."

301.210. "1. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall indorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the director of revenue, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer.

"2. The buyer shall then present such certificate, assigned as aforesaid, to the director of revenue, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, the fee therefor being one dollar.

\*　　\*　　\*　　\*　　\*　　\*

"4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

301.620. "If an owner creates a lien or encumbrance on a motor vehicle or trailer:

"(1) The owner shall immediately execute the application, in the space provided therefor on the certificate of ownership or on a separate form the director of revenue prescribes, to

name the lienholder on the certificate, showing the name and address of the lienholder and the date of his security agreement, and cause the certificate, application and the required fee to be delivered to the lienholder;

"(2) The lienholder shall immediately cause the certificate, application and the required fee to be mailed or delivered to the director of revenue;

\* \* \* \* \* \*

"(4) Upon receipt of the certificate of ownership, application and required fee, the director of revenue shall either indorse on the certificate or issue a new certificate containing the name and address of the new lienholder, and mail the certificate to the first lienholder named in it."

This Court finds that title to the 1964 Jaguar automobile passed to Samuel N. Alexander prior to February 8, 1966, for two reasons:

First, when Henry Swetman endorsed the Florida Certificate of Title to Samuel N. Alexander, showed him the duly acknowledged endorsement, and stated that he would take the Florida Title and the Application for Missouri Title, Retail Installment Contract, and note executed by Alexander to the Tower Grove Bank and Trust Company, and Alexander acquiesced in this procedure, there was a delivery in compliance with RSMo 301.210(1).

In Galemore v. Mid-West National Fire & Casualty Ins. Co., 443 S.W.2d 194 at 199 (Spr.App.1969), stated that:

"Delivery may be either actual or constructive. School Dist. of City of Kansas City v. Stocking, 138 Mo. (banc) 672, 688, 40 S.W. 656, 660, 37 L.R.A. 406; Welch & Harvey v. Dameron, 47 Mo.App. 221, 227–228(2); Cownie v. Local Board of Review in and for City of Des Moines, 235 Iowa 318, 16 N.W.2d 592, 598(6). Constructive delivery is a general term, comprehending all those acts which, although not truly conferring a real possession on the vendee, have been held, by construction of law, equiva-lent to acts of real delivery. Black's Law Dictionary (4th Ed.), p. 515. It has been defined in this jurisdiction thusly: 'A constructive delivery is when, without actual transfer of the goods or their symbol, the conduct of the parties is such as to be inconsistent with any supposition [other] than that there has been a change in the nature of the holding \* \* \*.' Swafford v. Spratt, 93 Mo.App. 631, 635, 67 S.W. 701, 702. See Bass, Maxwell & Co. v. Independent Gin Co., 140 Okl. 80, 282 P. 635, 637(4). Numerous cases involving instruments other than conveyances of real estate declare and demonstrate that there may be constructive delivery of such instruments even without manual transfer of possession."

Thus, the title was delivered to Alexander although it was kept by Classic Cars, Ltd., as agent for Alexander, who in turn delivered it to the bank. When the Missouri title was issued to Alexander it was retained by the Tower Grove Bank and Trust Company.

But, more importantly, when the note and Retail Installment Contract were executed by Alexander and Schmitt, a lien was created. Thus, the transaction is in compliance with RSMo 301.620 in that Alexander caused the certificate, application, and fee "to be delivered to the lienholder."

In none of the cases in which permissive-user coverage under the seller's liability insurance policy has been predicated upon failure to endorse and deliver the then valid certificate of ownership under RSMo 301.210 has the seller provided a proper endorsement on the certificate of ownership prior to the critical point in time, the collision. Nor has the seller even had the certificate of ownership present at the time the transaction of sale purported to be completed. Thus, in Greer v. Zurich Ins. Co., 441 S.W.2d 15 (Mo.1969), Carl Cantwell, d/b/a Cantwell Motors, retained the certificate of ownership to the car for several months prior to the collision. In Sabella v. American Indemnity Co., 372

S.W.2d 36 (Mo.1963), the dealer had forwarded the existing certificate to Jefferson City, Missouri, in order to get title in his, the dealer's name. The certificate had not yet been received from Jefferson City and, therefore, had not yet been endorsed or delivered to the buyer at the time of the collision. In Haynes v. Linder, 323 S.W.2d 505 (K.C.App. 1959), there had been an informal repossession for several months before the collision, but the title holder had retained the certificate during this period of time. And in Allstate Ins. Co. v. Hartford Accident & Indemnity Co., 311 S.W.2d 41 (Spr.App.1958), although the time span was short, the Court held that the endorsement and delivery of the certificate had not taken place until the morning following the collision. The purpose of RSMo 301.210 is to

> "* * * hamper the traffic in stolen automobiles and to prevent fraud and deceit in the sale of used cars." Greer v. Zurich Ins. Co., 441 S.W.2d 15, 26.

In the above cited cases, the seller or dealer remained, until the time of the collision, in a position to deal with the certificate of ownership in a manner inconsistent with the interests of the buyer. That is not the case here, because Mr. Swetman endorsed the Florida Certificate of Title on December 24, 1965, a day before the car was actually delivered, and this certificate, along with the application for a new certificate in Alexander's name, was immediately started on its way to the office of the Director of Revenue in precisely the way contemplated by the lien statute. The purpose of the statute was, therefore, fully satisfied.

There is no inconsistency between what is said here and Greer, Sabella, or § 301.210. But, if any is asserted, it should be observed that the lien statute, RSMo 301.600—301.670, became effective July 1, 1965. The facts in even the 1969 decision in Greer v. Zurich Ins. Co. occurred in 1962 and those in the other decisions in 1962 or earlier.

Second, the issuance by the Missouri Director of Revenue on January 4, 1966, of a Missouri certificate of ownership standing in the name of Samuel N. Alexander, constituted a determination by the Director of Revenue that Alexander had title to the car, and created a new document by means of which subsequent sales of the car were to be accomplished. . Greer v. Zurich Ins. Co., supra; Sabella v. American Indemnity Co., supra, and the earlier cases, apply to the failure by a dealer to take the necessary steps to endorse and deliver to a buyer the certificate of ownership standing in the name of the dealer or his vendor. These cases have no application to a situation where, as here, the existing certificate and the application for certificate in the name of the buyer have been fully processed, and a new certificate of ownership in the name of the buyer has been issued prior to the date of the accident in question.

Once the Missouri title was issued, it became the certificate of ownership under which only Alexander could transfer ownership.

It follows from the above that on February 8, 1966, Alexander was the owner of the 1964 Jaguar. Therefore, the concept of either express or implied permission for Alexander to drive the automobile is wholly inapplicable in this case. The Court finds that there is no coverage under the policies of American Insurance Company or Insurance Company of North America. Judgment for the plaintiff and intervenor will be entered.